# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LAURIE SIMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>BAYER CORPORATION, et al.,<br><br>Defendants. | Civil Action No.: 05-3895 (JLL)(JAD)<br><br>**ORDER AND OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on submissions dated January 18, 2019, by plaintiff Realtor Laurie Simpson ("Realtor") and defendant Bayer Corporation ("Bayer") regarding various discovery disputes between the parties. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Realtor's and Bayer's requests are **DENIED in part** and **GRANTED in part**.

## DISCUSSION

### I. Discovery Standard

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation. Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

1

The party seeking to compel discovery bears the initial burden of establishing the relevance of the information. *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

"While broad, the scope of discovery is not boundless" and courts will not permit parties to engage in fishing expeditions. *Plastipak Packaging, Inc. v. DePasquale*, 363 F. App'x 188, 192 (3d Cir. 2010) (concluding "we discourage 'fishing expeditions'"); *Unicasa Mktg. Grp., LLC v. Spinelli*, No. 04-4173, 2007 WL 2363158, at *2 (D.N.J. Aug. 15, 2007). The Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Fed. R. Civ. P.* 26(b)(2)(C). Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible ... while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." *Schmulovich v. 1161 Rt. 9 LLC*, Civ. No. 07-597, 2007 WL 2362598, at *1–2 (D.N.J. Aug. 15, 2007).

## II. DISCOVERY ISSUES RAISED BY REALTOR

Realtor seeks an order requiring Bayer to: (1) locate and search a litigation archive made for preserving subsequently deleted data; (2) produce information about incentive compensation for employees who participated in selling and marketing Trasylol and Avelox; (3) produce data reflecting sales of Trasylol and Avelox to hospitals and other health care institutions; (4) produce information about Bayer's payments to health care professionals in connection with Avelox; (5) remove redactions that Bayer has applied to conceal computer file names of related documents; and (6) produce documents responsive to Realtor's document requests that demand information in connection with Realtor's retaliation claims.

### A. *Lotus Notes Litigation Archive*

According to Realtor, Bayer employees utilized a Lotus Notes email system which stored electronic mail on Lotus Notes computer servers. In order to reduce storage costs, Bayer implemented a plan that would reduce active server storage while ensuring preservation. On June 14, 2004, Bayer sent an email instructing employees to delete their emails because an archived copy had been created on June 11, 2004. Realtor subpoenaed the former Bayer employee responsible for Lotus Notes, Philip Bossy, who confirmed that he was informed by the responsible employee that the archive was run successfully. Realtor argues that Bayer's has not searched the Lotus Notes Archive for the purpose of this case and thus relevant information has not been produced. Realtor points to the fact that Bayer has failed to produce any custodial emails in 2003 or 2004 for nearly half of the 20 Avelox custodians.

Realtor argues that the six proportionality factors weigh in favor of production. First, Realtor argues that the qui tam provisions of the False Claims Act are important tools for protecting the public interest by rooting out, preventing, and prosecuting fraud against the

3

government. Second, Realtor argues that discovery costs do not outweigh the amount in controversy as Bayer sold over $1 billion worth of Trasylol, half of which was administered to Medicare and Medicaid patients, and taking into consideration the number of claims, and mandatory statutory penalties of between $5,500 and $11,000 per claim, and treble damages provided under the FCA, Bayer faces at least hundreds of millions of dollars in liability. Realtor argues that it has no independent access to the emails and that as a multi-billion dollar company; Bayer has the resources to bear the cost of production. Realtor also argues the emails are an important facet of discovery and that it has identified a significant drop-off in emails during this period. Realtor finally argues that Bayer cannot credibly suggest that the cost of accessing its own archive outweighs the utility of data it sought to preserve for litigation.

In its opposition, Bayer argues that this issue has already been resolved. According to Bayer, Realtor raised the same issue with Judge Dickson. In response, Bayer explained that it was unable to confirm whether a copy of the archive was ever made, but that it would produce custodial data from the relevant time period. Judge Dickson then stated it was "unclear if anything remains for the Court to address regarding this issue" and denied Realtor's demand. Realtor did not appeal that order to Judge Linares, which Bayer believes ends the matter.[1] Second, Bayer argues it has already conducted and then re-run Realtor's requests and been unable to find the 2004 Lotus Notes Litigation Archive. Bayer acknowledges that some documents suggest that the archive exists, but it argues it has spent a significant amount of time looking for the archive and been unable to find it. Nevertheless, Bayer says it has found and

---

[1] The full order states: "With regard to Realtor's request for information regarding Bayer's efforts to locate a particular e-mail archive, (Realtor Letter at 4-5, ECF No. 286), it appears Bayer has now provided that information ("after dozens of hours and conversations with numerous employees, Bayer has been unable to confirm whether the copy was ever made"). (Def. Letter at 3, ECF No. 287). Bayer has also noted, however, that "it has custodial data from the relevant period, which it will produce as part of its Avelox custodian production." Id. It is unclear if anything remains for the Court to address regarding this issue.

4

produced a significant quantity of emails from the period. Bayer further argues that it has already produced the documents that would have been contained in the archive. Furthermore, Bayer says it is working on completing additional productions that contain documents from Tim Daniels and James Petersen and that it is working to confirm it has produced all documents in its possession from Paul Bedard. Finally, Bayer argues that even assuming that an archive was created, six years elapsed until the time Bayer learned about this litigation in 2010, thus Bayer had no obligation to preserve data before then.

**Opinion**

It is the opinion of the Special Master that Realtor has met its initial burden to demonstrate that the 2004 Lotus Notes Litigation Archive is relevant. However, Bayer has stated that it has actively searched for the 2004 Lotus Notes Litigation Archive and has been unable to locate the archive. Based on the representations of Bayer's counsel that it has thoroughly searched and attempted to locate the 2004 Lotus Notes Litigation Archive and been unable to discover the archive, the Special Master will deny Realtor's request for an order compelling Bayer to produce the 2004 Lotus Notes Litigation Archive. The Special Master cannot order Bayer to produce information that it avers that it cannot locate or does not have.

### *B. Bonus and Incentive Compensation*

Realtor argues that the Complaint alleges that Bayer's scientific affairs personnel were improperly focused on increasing sales and that sales representatives were incentivized to promote Bayer products for off-label uses. Thus Realtor argues that information that Bayer financially incentivized its employees to engage in the very conduct at the core of this litigation is directly relevant. Realtor maintains that discovery has revealed that when calculating sales bonuses, Bayer did not distinguish between sales for on and off-label uses, thereby providing

financial incentive for sales representative to promote drugs for uses that were not reasonable and necessary and, accordingly, non-reimbursable by federal health care programs.

On October 5, 2018, Realtor wrote to Bayer requesting information related to bonus payment, performance review, and personnel files. Specifically, Realtor's request stated:

> Realtor's Second Request for Production of Document Numbers 40 and 41 seek all documents describing the calculation, determination and payment of all incentives, awards or bonuses to scientific affairs, medical affairs, sales force, and brand management personnel relating to sales of Trasylol and Avelox. Realtor's Second Request for Production Number 79, and Third Request for Document Numbers 20, 21, 22, 26, 28, 44, and 47 also seek personnel file information. Bayer previously objected to producing much of this information on relevance and proportionality grounds, but at the September 5, 2018 meet and confer, Bayer indicated that it would consider production of this information for a subset of employees.
>
> As an initial matter, with respect to documents related to the operation of bonus and incentive award programs for Trasylol and Avelox (e.g. how incentives and bonuses were calculated, etc.), we request that you produce that information within 14 days. This would include information describing the bonus and incentive award calculations criteria for all scientific affairs liaisons and sales representatives. With respect to report of incentive compensation for particular employees, we request that you provide the requested information for: (i) all Scientific Affairs personnel with Trasylol or Avelox-related responsibilities; and (ii) all sales representatives and institutional sales specialists with Trasylol-related responsibilities and who covered any of the 50 hospitals identified in Exhibit L. With respect to personnel file information, please produce personnel files (including performance reviews) for the following subset of employees: (i) all product management personnel with Trasylol or Avelox-related marketing responsibilities; (ii) all Scientific Affairs personnel with Trasylol or Avelox-related responsibilities; (iii) all Division Sales Managers with Avelox-related responsibilities; and (iv) all employees identified in Realtor's Third Request for Production Numbers 22, 26, 28, 44 and 47.

Realtor now seeks an order requiring Bayer to produce the information identified above. Realtor argues it has only received limited discovery related to these requests. Realtor further

alleges that during the parties' December 5, 2018 meet and confer, Bayer claimed to be unable to locate any additional documents related to bonus and incentive compensation. Nevertheless, Realtor argues that the factors of Rule 26(b)(2) weigh in favor of requiring Bayer to produce bonus and incentive compensation materials.

Bayer argues that it has already fulfilled its obligations to produce documents responsive to this request. It believes Realtor's requests are overbroad, unduly burdensome, and only tangentially relevant. Bayer argues that after back-and-forth between the parties, Bayer conducted reasonable searches for documents associated with the specific individuals identified in Realtor's Third Request for Production Nos. 22, 26, 28, 44, and 47 to see whether it could identify performance evaluations, personnel files, or other documents relevant to bonus and incentive compensation. Bayer maintains that it was unable to find any responsive documents not already produced pursuant to the agreed-upon search terms. Bayer argues that Realtor, undeterred, then demanded additional searches for bonus and remuneration related documents at the parties' December 5, 2018 meet and confer. Bayer explains that it does not in the normal course of business review remuneration documents and that to undertake this task would be exceedingly burdensome. Bayer also argues that as things stand, Realtor admits she has received a cache of documents related to bonuses and incentive structure, and Bayer has stated that it has produced documents hitting the parties agreed-upon search terms but has also searched again for targeted personnel files and performance evaluations that Realtor believed would contain bonus and incentive compensation documents, but which were already produced. Bayer thus argues that Realtor's demand should be denied.

**Opinion**

It is the opinion of the Special Master that Realtor has met its initial burden to demonstrate that the bonus and compensation information it seeks is relevant. Bayer argues that it has conducted reasonable searches for documents associated with the specific individuals identified in Realtor's Third Request for Production Nos. 22, 26, 28, 44, and 47 and that Realtor's demand for additional information is exceedingly burdensome. However, Bayer has failed to describe with specificity that production of the discovery sought by Realtor will result in burden or expense that outweighs its likely benefit. Accordingly, Bayer is ordered to produce the information sought by Realtor, as outlined in Realtor's October 5, 2018 correspondence, within thirty days of the date of this Order. If Bayer does not possess the information sought in Realtor's October 5, 2018 correspondence, Bayer shall formally inform Realtor that it is not in possession of the information.

*C. Sales Data for Indirect Purchasers*

Realtor explains that Trasylol was commonly distributed to wholesalers, who then distributed it to hospitals. As this litigation concerns the usage of Trasylol by hospitals, which are indirect purchasers, Realtor argues it has repeatedly requested data maintained by Bayer which evidences these indirect sales. According to Realtor, Bayer has responded that it does not have this data. However, Realtor maintains that it has pointed to specific references within Bayer's existing document production indicating that Bayer not only maintained indirect sales data reflecting hospital usage, but used this data to calculate its return on investment and to allocate resources for the very practices that Realtor contends were illegal. Realtor argues that Bayer was also bound by a Corporate Integrity Agreement ("CIA") it entered with the government in 2001 to maintain the data Realtor is requesting. Realtor argues this information is

highly relevant to Realtor's claims that Bayer paid kickbacks and promoted off-label usage to the institutions for which Realtor seeks relevant indirect sales data.

Bayer argues that it has already produced four spreadsheets containing more than 56,000 pages of data and 809,494 separate, responsive entries. Bayer argues that the RFPs say nothing about "indirect" data and that Realtor only clarified its request on January 8, 2019. Bayer alleges that it then went back to its financial technicians and IT staff and asked them to search for the data Realtor described. Bayer's technicians and IT staff could find no such data. Bayer argues that any obligations it had under the CIA were obligations that flowed to the government, not Realtor. Bayer further argues that the nowhere does the CIA address indirect data.

**Opinion**

The Special Master has reviewed Realtor's Requests for Production Nos. 48-59 and 99-100 and Bayer's responses and finds Bayer's responses inadequate. The Special Master has also reviewed Realtor's January 8, 2019 correspondence to Bayer describing its request for data covering indirect sales. The Special Master will order Bayer to respond to Realtor's Requests for Production Nos. 48-59 and 99-100 within thirty days. The Special Master warns that if Bayer seeks to respond by referencing prior productions, it must provide the specific bates stamped documents to which it is referring. With respect to Realtor's January 8, 2019 correspondence and Bayer's position that it has searched for the data described and been unable to find information responsive to Realtor's requests, irrespective of any obligation Bayer may have had to maintain indirect data under the CIA, the Special Master cannot compel Bayer to produce documents it avows it does not have or cannot find. However, Bayer is ordered to provide the documents it does have in its possession responsive to Request for Production numbers 48-59 and 99-100.

## D. Avelox Program and Remuneration Information

Realtor seeks to compel Bayer to produce Avelox program attendance, payment, and remuneration information. Realtor argues that the relevance of this information is plain as it is fundamental to an Anti-Kickback Statute claim to provide discovery related to who got paid, how much they got paid, when they were paid, and why they were paid. Realtor alleges that Bayer ran several speaker events, and implemented other programs that served as vehicles to induce Avelox prescriptions through kickbacks. Realtor alleges that while Bayer does not dispute the relevancy of this information, Bayer is only willing to conduct additional targeted searches for this information if Realtor provides Bayer with appropriate parameters. Realtor argues that it has already specifically identified the programs administered by Bayer about which Realtor requests discovery and further that the burden does not fall on Realtor to learn whether, how, and where Bayer keeps relevant documents. Realtor argues that it is not required to fashion computer search terms to identify documents regarding specific programs which it has specifically identified for Bayer.

Bayer argues that the parties reached a court-approved agreement on Avelox search terms and custodians. The agreement was broad—the only limiting search term was Avelox. Bayer maintains that it has produced over 800,000 pages of documents running the Avelox search terms, and that more documents are in the pipeline. Bayer argues that it has agreed to consider additional targeted searches once Realtor provides Bayer with proposed custodians and search terms. Realtor has thus far failed to provide any proposed custodians or search terms. Bayer argues that the Special Master should order Realtor to either drop the issue or provide Bayer with the information it needs to conduct the extra searches she has demanded.

**Opinion**

It is the opinion of the Special Master that the information sought by Realtor regarding the Avelox program and remuneration information is relevant. According to Bayer, the parties entered a court approved agreement which governs discovery with respect to Avelox. Pursuant to this agreement, Bayer has produced several hundred thousand documents utilizing the agreed upon Avelox search term. In light of its prior searches and the extent of documents produced to date, Bayer argues that the Avelox discovery sought by Realtor will be most effectively retrieved if Realtor provides Bayer with the additional search terms and custodians it wishes to search. In its October 5, 2018 correspondence, Realtor provided the information it seeks with respect to Avelox:

> Realtor has repeatedly requested that Bayer produce attendee lists, payment information (including honoraria, speaker and/or consultant payments, meals, gifts, travel, lodging, and recreational activities), and program materials pertaining to Avelox marketing, consultant, and continuing medical education ("CME") programs. . .
>
> While Bayer did replace these slip sheets on July 25, 2018, it is now apparent that the Avelox production does not contain complete attendees lists, payment information and program details for the following:
>
> - Avelox launch Programs and Symposia—see, e.g., Ex. N (BAYQT00108613)
> - Clinical Advisory Panels—see, e.g., Ex. O (BAYQT00270262)
> - Velocity Challenge—see, e.g., Ex. P (BAYQT00109203)
> - Signature Series programs—see, e.g., Ex. Q (BAYQT00131775)
> - Avelox to the Max—see, e.g., Ex. R (BAYQT00137283)
> - Interantional Moxifloxacin Symposia—see, e.g., Ex. T (BAYQT00133675)

- Best in Class Telesymposia—see, e.g., Ex. T (BAYQT00133675)
- Breakfast Roundtables—see, e.g., Ex. U (BAYQT00249528)
- Other Consultant and Advisory Programs and Meetings (i.e. ACES 2000 consultant meetings, the Avelox consultant exchange newsletter, Bayer funded CME programs on Avelox, and Pulmonary Advisory Network ("PAN") meetings).

The Special Master believes Realtor has sufficiently described the information it seeks from Bayer and that such information is relevant to Realtor's claims. While Bayer has explained that it has conducted searches with the "Avelox" search term and produced over 800,000 pages of documents, it is not Realtor's responsibility to inform Bayer how to retrieve the information it seeks. "Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents." *Tarlton v. Cumberland Cty. Corr. Facility*, 192 F.R.D. 165, 170 (D.N.J. 2000). Accordingly, Bayer is ordered to produce the information sought by Realtor as outlined in Realtor's October 5, 2018 correspondence, within thirty days of the date of this Order.

### *E. Replacement Image Overly*

Realtor seeks an order compelling Bayer to replace documents for which it improperly redacted file names of attachments. According to Realtor, after Judge Dickson ordered Bayer to provide documents to realtor with redactions only for the names of other drugs, Bayer produced documents with additional redactions beyond those originally asserted. Bayer ultimately removed these redactions, then on March 28, 2018, produced thousands of slip sheets with the words "Non-Responsive" to withhold family member documents (e.g. attachments) which Bayer determined to be nonresponsive, even though the documents were attached to responsive documents. Realtor alleges that Bayer also deleted the computer file names found in the

12

attachment field of emails with attachments Bayer unilaterally deemed to be non-responsive, and replaced the name of the attachment with a generic "___.png" filename. Bayer ultimately replaced the slip sheets with the withheld documents but has not replaced the documents that contain the redacted filenames.

Bayer argues that Realtor's request for a replacement image overlay is both procedurally improper and substantively meritless. Bayer explains it initially slip-sheeted certain non-responsive documents that were part of families containing responsive documents. At Realtor's request, Bayer later produced the non-responsive documents. Bayer argues that Realtor is now claiming that Bayer deleted computer file names associated with these non-responsive yet produced documents. Bayer argues that this is the first it is hearing about these allegations and that Realtor has not made a single request regarding the issue. Bayer argues that Realtor has failed to meet and confer with it about the issue thereby violating Local Rule 37.1(a)(1). Additionally, Bayer argues that Realtor is substantively wrong, as Bayer did not delete the computer file names from non-responsive documents; it simply replaced the slip-sheets with the actual documents in their original form and produced them to Realtor. The file name metadata was not changed between the first production and re-production.

**Opinion**

According to the assertions made in Bayer's brief, it did not delete computer file names and the metadata was not changed with the documents produced. As Bayer asserts that it did not delete attachment file names and replace them with a generic "___.png" filename, there is no issue for the Special Master to decide. Therefore, Realtor's request for an order compelling Bayer to replace documents for which it improperly redacted file names of attachments is denied.

*F. Retaliation*

Realtor seeks an order requiring Bayer to produce all documents responsive to the requests contained in Realtor's Third Request for Production, served in February 2016, concerning Realtor's retaliation claim. According to Realtor, Bayer responded on March 10, 2016, that it would produce documents responsive to the requests; however, it has only produced 64 pages which it maintains is plainly inadequate. Realtor argues that Bayer is seeking to improperly shift its obligation to identify responsive documents onto Realtor, stating that production is complete and requesting that Realtor identify any holes in the production. Realtor thus seeks an order that Bayer produce retaliation related documents responsive to Realtor's Third Request for Production Nos. 1-19, 23, 25, 27, 29, 31, 42, and 47.

Bayer alleges that it has produced Realtor's entire personnel file, which is responsive to many of Realtor's Requests for Production and is the most relevant information Realtor has requested. Bayer argues it has been unable to produce substantial additional employment related documents because Realtor has refused to provide Bayer with the information it needs. Bayer alleges that it has consistently agreed to produce employment-related documents; it has simply requested that Realtor provide additional parameters for her requests. Bayer argues that Realtor has only directed it to Realtor's Requests for Production and suggested that Bayer search the files of ten custodians, many of whom would be new custodians to the litigation. Bayer argues that notwithstanding Realtor's refusal to clarify her requests, it is working on its own to identify additional documents relevant to Realtor's employment related allegations and anticipates producing those documents shortly. Bayer further argues that it has fulfilled its obligations by conducting searches and producing documents responsive to the parties' agreed-upon search terms. Because Realtor continues to make new demands and seek additional documents, Bayer argues that Realtor at least bears the burden to identify the documents she seeks, explain why

14

those documents are responsive, and justify her requests in light of Rule 26(b)'s proportionality and burden principles.

**Opinion**

The Special Master has reviewed Realtor's Third Request for Production Nos. 1-19, 23, 25, 27, 29, 31, 42, and 47 and Bayer's responses, and finds that the information sought is relevant to Realtor's claims. While Bayer explains that it is willing to conduct additional searches and that it is just waiting for Realtor to propose search parameters, "[u]nder the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents." *Tarlton v. Cumberland Cty. Corr. Facility*, 192 F.R.D. 165, 170 (D.N.J. 2000). Accordingly, the Special Master will order Bayer to respond to Realtor's Third Request for Production Nos. 1-19, 23, 25, 27, 29, 31, 42, and 47 within thirty days.

**II.    Discovery Issues Raised by Bayer**

**A. False Claims & Damages**

Bayer alleges that Realtor has failed to respond to its requests that she produce the documents supporting her core allegations: allegedly false claims. Bayer alleges that Realtor has failed to produce a single purportedly false claim and that in the Court ordered settlement process, Realtor identified only $106,400 in purportedly false claims. Bayer argues that in the Third Circuit, a plaintiff must link the allegedly unlawful activity to actual claims as allegedly unlawful activity does not simply taint all contemporaneously submitted claims. Bayer alleges that it has requested that Realtor produce the allegedly false claims she intends to rely on at summary judgment and trial and requests that the Special Master order Realtor to produce the documents that show which Trasylol and Avelox claims she intends are false. Bayer also argues that Realtor has failed to produce documents relevant to her theory of damages.

15

With respect to Bayer's demands that Realtor identify the specific claims she contends are false, Realtor argues that while they are cloaked as discovery demands, Bayer is in actuality requesting contention discovery, which should be denied as premature. Realtor argues that Bayer is demanding that she respond to contention discovery while simultaneously withholding information, uniquely in its possession, that is relevant to the very contention requests that Bayer propounds. Realtor argues that it is well established that contention discovery should be deferred to the end of the fact discovery period. Realtor points out that fact discovery remains incomplete and expert discovery has not commenced.

Realtor further asserts that Bayer has mischaracterized its confidential settlement brief, which it asserts is an egregious disclosure of confidential settlement information and should not be considered by the Special Master. Realtor argues that the claims referenced in her settlement materials were examples of the claims she purports are false. Realtor argues that she was not then and is not now in a position to identify all such claims, given that fact and expert discovery are not complete. Realtor argues that Bayer's demand should therefore be denied as premature.

With respect to Bayer's demand for government guidance, Realtor argues that the Complaint clearly alleges that Bayer violated the False Claims Act and the Anti-Kickback Statute. Realtor argues that under Third Circuit law in False Claims Act cases based on violations of the Anti-Kickback Statute, a Realtor need only prove that a defendant knowingly and willfully paid remuneration where at least one purpose of the remuneration was to induce referrals-not that the defendant had specific intent to violate the Anti-Kickback Statute. Realtor further argues that government guidance is by definition publicly available and thereby equally accessible to Bayer.

Finally, with respect to documents relevant to Realtor's damage theory, Realtor argues it has produced documents reflecting hundreds of thousands of claims for both Trasylol and Avelox and will continue to produce additional claim information before the end of the discovery period. Realtor argues that she has therefore produced documents relevant to her damage theory. To the extent that Bayer is asking Realtor to specifically identify the scope of the alleged damages, Realtor argues such a request is premature as it requires Realtor to apply legal conclusions to facts at a time inconsistent with the status of fact and expert discovery. Consistent with Rule 26 disclosures, Realtor intends to provide after the close of fact discovery an expert report quantifying the amount of damages she seeks to recover at trial.

**Opinion**

Realtor characterizes Bayer's Second Requests for Production Nos. 1-14, 18-19, and 22 as contention discovery. The Special Master agrees with Realtor that Bayer's Second Requests for Production Nos. 1-14, 18-19, and 22 are contention-type requests. See *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2018 WL 6048262, at *3 (N.D. Ill. Nov. 19, 2018).

Contention requests for production are reasonable and potentially useful to contention interrogatories, assuming that the requests for production themselves are valid. See *Burnett & Morand Partnership v. Estate of Youngs*, No. 3:10-cv-3-RLY-WGH, 2011 WL 1237950, at *2-3 (S.D. Ind. Apr. 4, 2011)(finding contention requests for production appropriate "to bring to light the parties' position in an informed and controlled manner that winnows down the resolution of a dispute"). The Special Master is guided by the following:

> Contention interrogatories are permissible to ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention. A court may defer such interrogatories until the end

17

> of discovery. The party serving the interrogatories must prove how discovery is benefited by an earlier answer. It must show that early answers will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56. However, if the Court forces plaintiff to respond, it may have to set forth theories of its case that have not yet been developed.

*Conopco, Inc. v. Warner-Lambert Co.*, 2000 WL 342872, at *4 (D.N.J. Jan. 26, 2000) (quoting *B. Braun Med. Inc. v. Abbott Lab.*, 155 F.R.D. 525 (E.D. Pa. 1994)) (internal quotation omitted); see also *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110-11 (D.N.J. 1990) (concluding that contention interrogatories were premature where discovery was in its infancy and noting that judicial economy as well as efficiency for the litigants weighed in favor of deferring contention interrogatories until after substantial amount of discovery was conducted).

Despite Realtor's position that Bayer's contention requests are premature, the Special Master notes that this matter has been pending for over 13 years. While Realtor continues to seek documents from Bayer, it is simply not credible for Realtor to assert that it is not in the position to provide Bayer with documents in response to Bayer's Second Requests for Production Nos. 1-14, 18-19, and 22. According to its January 11, 2019 correspondence, Realtor's own position has been that it is collecting documents reflecting claims for Avelox and Trasylol from third parties and would produce them as they were received. Realtor is thus ordered to respond to Bayer's Second Requests for Production Nos. 1-14, 18-19, and 22 with the documents it currently has in its possession within thirty days of the date of this Order.

### B. Realtor's Production of Communications and Employment Information

Bayer argues that Realtor has failed to certify whether she has produced all non-privileged communications that she had with others inside or outside of Bayer, including government representatives, regarding this case and any underlying facts. According to Bayer,

18

Realtor has also committed to searching her remaining alias email accounts and producing any responsive documents by February 11, 2019, but has still failed to confirm whether she has produced or will produce all non-privileged communications she had with others regarding this case. Bayer further maintains that Realtor has failed to certify whether she has produced all employment and salary information in her possession. Realtor argues that it is beyond dispute that Realtor's post-termination employment and salary history are relevant to these allegations.

With respect to Realtor's production of case-related communications, Relator has agreed to produce all non-privileged, responsive case-related communications from her personal email accounts. Realtor maintains that she is continuing to search for and produce responsive, non-privileged communications from other email accounts. Thus Realtor argues there is nothing for the Special Master to resolve with respect to this issue.

With respect to salary and employment information, Realtor maintains that she has already agreed to produce all non-privileged documents reflecting post-termination employment and salary information in her possession and intends to do so by February 11, 2019. Thus Realtor argues there is nothing for the Special Master to resolve with respect to this issue.

**Opinion**

Realtor has asserted that it has agreed to produce all non-privileged, responsive case-related communications from her personal email accounts, which was anticipated to have been completed by February 11, 2019, according to Realtor's January 11, 2019 correspondence. Realtor also asserts that she has agreed to produce all non-privileged documents reflecting post-termination employment and salary information in her possession, which was also anticipated to have been completed by February 11, 2019. Accordingly, with respect to these two issues, there is nothing for the Special Master to resolve. However, with respect to Bayer's argument that

19

Realtor has failed to certify whether she has produced all non-privileged communications that she had with others inside or outside of Bayer, including government representatives, regarding this case and any underlying facts in response to Bayer's Second Request for Production Nos. 25-29, the Special Master does not know if documents were ever produced and if so what documents were provided as this issue was not addressed by Realtor. As such, the Special Master will order Realtor to provide responses to Bayer's Second Request for Production Nos. 25-29 or provide a certification that all information responsive to these requests has been provided.

**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
**Special Master**

Date: 3/4/19