

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*   (973) 645-2700
*Newark, New Jersey 07102*     (973) 353-6094
                                Fax: (973) 297-2010

October 3, 2019

Via ECF

The Honorable Joseph A. Dickson
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re:   *United States ex rel. Simpson v. Bayer Pharmaceutical Corp., et al.*
           Civil Action No. 2:05-cv-03895 (JMZ) (JAD)

Dear Judge Dickson:

      The United States respectfully submits this letter brief in support of its motion to quash or modify a third-party subpoena that defendant Bayer Corporation (Bayer) served on the Centers for Medicare and Medicaid Services (CMS), a component of the United States Department of Health and Human Services (HHS), to the extent the subpoena applies to hundreds of millions of aged Medicare paper records dating from 1996 through 1999.

      On March 13, 2019, defendant Bayer served a facially overbroad and unduly burdensome third-party subpoena under Rule 45 on CMS, a non-party to this action. *See* Rule 45 Subpoena to CMS dated March 13, 2019 (attached as Exhibit 1). The subpoena contained thirty (30) separate requests demanding the production of documents "in any way related" to "claims received under any facet of the Medicare program" over a twenty-three year period (from January 1996 to the present). *See id.* Request Nos. 1, 8, 9, 14, 15. Because Bayer's subpoena is so vastly overbroad, it potentially encompasses nearly 230 million pages of aged Medicare paper records dating from 1996 through 1999, contained in over 91,000 boxes dispersed at several government storage sites around the country that were scheduled for disposal. *See* Declaration of Chris Klots ("Klots Decl.") ¶¶ 4, 19.[1]

---

[1] Chris Klots is the Senior Technical Advisor of the Medicare Contractor Management Group ("MCMG"), which is a major organizational component within CMS. *See* Klots Decl. ¶ 1. Among his responsibilities, Mr. Klots leads "MCMG efforts to reduce the massive volume of aged paper Medicare records held in storage by Medicare Administrative Contractors ("MACs")." *See id.* MACs, which were formerly "fiscal intermediaries" for Medicare Part A and "carriers" for Medicare Part B, process fee-for-service Medicare claims for Medicare Parts A and B. *See id.* ¶ 6. The information about the content of the boxes is based upon Mr. Klots' personal review of a sampling of the manifests of the boxes, information provided to him from the various MACs holding the boxes, and his knowledge and experience of the types of claims administered by the MACs. *See* Klots Decl. ¶¶ 1-3, 15-16.

In a good faith effort to address the issue, CMS through its attorneys from the HHS-Office of General Counsel (HHS-OGC), provided Bayer's counsel with detailed information about the aged paper records. Despite requests from HHS-OGC, Bayer has refused to confirm that its subpoena does not cover these aged paper records or to narrow the scope of the subpoena to exclude these records. Bayer has also refused multiple offers to review a sample of the aged paper records at one of the storage sites, complaining of the expense. Because Bayer's overbroad subpoena is disrupting CMS's ability to undertake the planned and orderly disposal of its aged paper records, imposing unnecessary costs and risking the loss of obligated funds, *see* Klots Decl. ¶¶ 34-37, the Government has no choice but to seek relief from the Court.

The United States respectfully requests that Bayer's subpoena to CMS be quashed or modified as applied to the aged Medicare paper records for the following reasons: 1) the aged paper records are irrelevant, as they largely predate the timeframe for this litigation; 2) the aged paper records are irrelevant to Bayer's claimed need for discovery – the materiality of the violations alleged in the underlying complaint; 3) the extreme and undue burden of sifting through hundreds of millions of pages of aged paper records of no likely relevance is not proportional to the needs of this case; and 4) there are less burdensome alternatives to the discovery Bayer seeks, and Bayer has failed its express duty under the Federal Rules of Civil Procedure to take reasonable steps to avoid imposing undue burden on CMS.

## FACTUAL AND PROCEDURAL BACKGROUND

A. <u>The Relator's Complaint</u>

The relator, Lauren Simpson, filed this action under seal in August 2005 pursuant to the *qui tam* provisions of the False Claims Act (FCA).[2] *See* 31 U.S.C. § 3729 *et seq.* The United States declined to intervene on February 10, 2010, (ECF No. 16), and the case was unsealed on February 24, 2010. (ECF No. 18). In her Tenth Amended Complaint (TAC), the relator alleges that "Bayer engaged in unlawful marketing, including off-label marketing and payment of kickbacks, in order to increase the market shares of its prescription drugs Trasylol and Avelox." TAC ¶ 9. She further alleges that through its actions Bayer knowingly caused the submission of false claims to the Medicare program in violation of the FCA. With respect to Trasylol, the relator alleges that Bayer violated the FCA for claims submitted after August 1999. *See* TAC ¶¶ 330, 340, 352, 361, 372, 381, 393, 399, 405, 411. With respect to Avelox, the relator alleges that Bayer violated the FCA for claims submitted after July 2000. *See* TAC ¶¶ 420, 426.

B. <u>Bayer's Rule 45 Subpoena to CMS</u>

On March 13, 2019, Bayer served a vastly overbroad and unduly burdensome Rule 45

---

[2] The FCA permits either the Attorney General or a private party, known as a relator, to initiate a civil action alleging fraud on the Government. Under the statute, the United States is initially given 60 days to decide whether to "intervene and proceed with the action." 31 U.S.C. § 3730(b)(2). This sixty-day period may be extended by the Court upon a showing of good cause. 31 U.S.C. § 3730(b)(3). If the United States intervenes, it acquires "the primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1). If, however, the United States declines to intervene, the relator may proceed with the action.


subpoena on CMS. In its cover letter, Bayer stated that "both DOJ and the relator have argued that materiality turns on factual questions,[3] and CMS has information directly related to those factual questions. Bayer must understand in detail CMS's processes for receiving, reviewing, and deciding whether to pay Medicare claims (or directing States to do the same)." *See* Cover Letter to Rule 45 Subpoena at 1 (Exhibit 1). The subpoena contains 30 separate requests, demanding the production of documents and information covering a twenty-three year period (from January 1, 1996, to the present), far exceeding the relevant period for the claims at issue in this litigation. Instead of focusing on the materiality of the specific violations alleged in the complaint with respect to claims involving Trasylol and Avelox, Bayer's requests are extraordinarily broad, demanding information concerning "claims received under any facet of the Medicare program."

C. <u>CMS's Objections and Efforts to Comply With Bayer's Subpoena</u>

CMS, through its attorneys from HHS-OGC, submitted timely objections to Bayer's subpoena on several grounds, including that the 30 document requests were overly broad and unduly burdensome, but expressed its commitment to working with Bayer to produce "responsive, non-privileged data in a manner consistent with federal law, regulations, and procedure, without subjecting the Department to an unreasonable burden." *See* Letter from Lindsay Turner to Jonathan F. Cohn dated March 25, 2019 (attached as Exhibit 2). Since receiving the subpoena, HHS-OGC has made eight productions of information on behalf of CMS in a good faith effort to provide Bayer with information in accordance with its priorities.

D. <u>The Aged Paper Records</u>

During a conference call on June 19, 2019, HHS-OGC first notified Bayer's counsel that there existed a significant volume of aged paper records dating from 1995 through 1999 that were otherwise scheduled for disposal and held by one or more Medicare Administrative Contractors (MACs) in record storage sites across the United States. HHS-OGC explained that because of the sheer over-breadth of Bayer's subpoena, these aged paper records were possibly responsive to the subpoena. HHS-OGC further explained, however, that because of the significant volume of boxes coupled with the fact that the manifests associated with the boxes were not detailed, there was a low likelihood of finding certain types of records that Bayer had previously prioritized and that a manual search of the boxes would be unduly burdensome.

In response to Bayer's request for additional information and in an effort to be as transparent as possible, HHG-OGC subsequently provided Bayer with a detailed CMS memorandum estimating the number of pages and boxes held by the MACs. The memorandum also explained the types of records, the costs of storage, and the estimated expense and staff time necessary to retrieve and review the paper records on a page-by-page basis. *See* Memorandum

---

[3] Bayer mischaracterizes the Government's position on materiality, which was set forth in detail in the United States Statement of Interest filed in connection with the parties' cross motions for partial summary judgment. *See* ECF No. 338. Nothing in the Government's Statement of Interest or the views expressed by counsel at the oral argument on March 11, 2019, suggests that, whatever factual questions may be relevant to the materiality inquiry, those factual questions justify the kind of broad, irrelevant, and unduly burdensome discovery that Bayer has propounded in this case.

re: Minimum Estimated Time and Cost Associated with Searching Aged MAC Paper Records, dated July 16, 2019 (attached as Exhibit 3).[4]  Given the extreme and undue burden on the agency, HHS-OGC notified Bayer that it wished to proceed with the planned destruction of the aged paper records.  HHS-OGC also suggested that to the extent Bayer insisted that the paper records be retained, Bayer should assume the costs associated with their review and production. *See id.* (cover Email from Eden Heard, dated July 16, 2019).

In July, HHS-OGC provided additional information that Bayer had requested and offered to "make a significant sampling of these boxes of aged documents available to [Bayer] for inspection at a facility in Camden, South Carolina at [Bayer's] expense." *See* Email Chain Re: Summary of 4.11.19 Meet and Confer re: CMS Subpoena in Simpson v. Bayer [status email 7.26.19], dated July 26, 2019 (attached as Exhibit 4).  During an August 8, 2019 conference call, HHS-OGC again offered Bayer the opportunity to inspect a sampling of the records at Bayer's expense and sought to discuss the logistics of any such review.  In a letter dated August 16, 2019, HHS-OGC asked Bayer to confirm that the aged paper records were outside the scope of the subpoena or to narrow the scope of the subpoena to exclude these records.  *See* HHS-OGC Letter to Sidley (Attached as Exhibit 5).  Finally, CMS has repeatedly offered to produce electronic claims data upon Bayer's submission of an appropriately targeted request and payment of the normal processing charge for such information.  *See id.* at 2-3; *see also* Email from Lindsay Turner dated April 12, 2019, third bullet) (attached as part of Exhibit 4).

Bayer refused to narrow the scope of the subpoena, refused to confirm that the aged records were beyond the scope of the subpoena, and has declined CMS's offer to inspect the records, necessitating this motion.  *See* Letter from James F. Perez dated August 23, 2019 (attached as Exhibit 6).

## ARGUMENT

I.  Because the United States Declined to Intervene, It Is Not a Party For Purposes of Discovery.

Because the United States declined to intervene, it is not a party to the case for purposes of discovery.  *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).  In *Eisenstein*, the Supreme Court considered whether the United States is a "party" in a declined *qui tam* action even though it remains the real party in interest.  At issue in the case was the applicability of either the 30-day limit to file a notice of appeal under Fed. R. App. P. 4(a)(1)(A) or the 60-day limit under Fed. R. App. P. 4(a)(1)(B) when the United States is a party.  In deciding the issue, the Court had to address the status of the United States when, as here, it declines to intervene in a *qui tam* action.

In addressing the issue, the Supreme Court noted that "the United States' status as a 'real party in interest' in a *qui tam* action does not automatically convert it into a 'party.'"  *Id.* at 934.

---

[4] The original estimates provided to Bayer in Exhibit 3 were based on the assumption that the subpoena covered a time-frame from 1995 through 1999.  Because the subpoena covers the time-frame from 1996 to the present, the estimates set forth in the Klots declaration supporting this motion are slightly lower because they exclude the year 1995.  *See* Klots Decl. ¶ 19.

The Supreme Court observed that "Congress expressly gave the United States discretion to intervene in FCA actions – a decision that requires consideration of the costs and benefits of party status." *Id.* at 933. The Supreme Court specifically identified party discovery under Fed. R. Civ. P. 26(a), 34, and 37, as one of the costs associated with "party status," and declared that it could not "designat[e] the United States a 'party' even after it has declined to assume the rights and burdens attendant to full party status." *Id.* at 934. The Supreme Court concluded that "the United States . . . is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established under federal law." Accordingly, the Court held that "when, as here, a real party in interest has declined to bring the action or intervene, there is no basis for deeming it a 'party' for purposes of Rule 4(a)(1)(B)." *Id.* at 935.

In this case, the United States declined to intervene. In so doing, under *Eisenstein*, the United States declined to assume the burdens attendant to full party status, including the obligations of party discovery under the Federal Rules of Civil Procedure. Accordingly, the rules for discovery from non-parties apply to Bayer's subpoena served upon CMS.

    II.    Discovery Served Upon a Non-Party Must be Relevant and Proportional and Cannot Impose an Undue Burden.

A subpoena issued to a non-party under Rule 45 "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *Fuller v. Insys Therapeutics, Inc.* 2018 WL 4941789 (D.N.J. Oct. 11, 2018). Fed. R. Civ. P. 26(b)(1), in turn, imposes relevancy and proportionality limitations. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense and proportional to the needs of the case"). In addition, Rule 26(b)(2) requires a court to limit discovery that is unreasonably cumulative or duplicative or outside the scope of Rule 26(b)(1):

> the court must limit the frequency and extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Furthermore, a court has the discretion to "issue an order to protect a party or person from . . . oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c); *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, *1 (D.N.J. Aug. 15, 2007). An undue burden exists when a subpoena is "unreasonable or oppressive." *See id.* at *4. While there is no strict definition of unreasonable or oppressive, courts consider several factors in determining a subpoena's reasonableness: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party. *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011). Accordingly, the scope of permissible discovery under the Federal Rules "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

Rule 45(d) provides additional protections to non-parties. Any court order for production or inspection must protect the non-party "from significant expenses resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). In addition, "[a] party or attorney responsible for issuing a subpoena *must take reasonable steps* to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1) (emphasis added); *see also* 9A Charles Alan Wright & Arthur R Miller, Federal Practice and Procedure § 2459 (3d ed. 2008).

Finally, Fed. R. Civ. P. 45(d)(3) sets forth the circumstances under which a subpoena must be quashed or modified, including when the subpoena "subjects a person to undue burden." *See id.*

   III.   Bayer's Overbroad Subpoena Should be Quashed or Modified Because the Aged Paper Records are Irrelevant, Not Proportional to the Needs of the Case, and Impose Undue Burden.

The United States' motion to quash or modify should be granted because, as demonstrated below, the hundreds of millions of pages of aged paper records that Bayer refuses to exclude from the scope of its overbroad subpoena are irrelevant to the materiality inquiry (Bayer's claimed need for discovery), disproportionate to the needs of this case, and would pose an extreme and undue burden upon CMS to retain, review and produce. Bayer has not only failed in its duty to take reasonable steps to avoid imposing undue burden and expense on CMS as a non-party, but its broad and sweeping discovery requests are not calculated to obtain relevant, much less admissible, evidence. Rather, Bayer has suggested that if the Government believes Bayer's discovery requests are too burdensome, it may avoid that burden by dismissing the relator's complaint.

   A.   The Aged Paper Records are Irrelevant Because They Fall Largely Outside the Time Period At Issue In This Litigation.

As an initial matter, because the aged paper records date from 1996 through 1999, they fall largely outside the time period at issue in this litigation and are therefore irrelevant. In other words, these aged paper records largely predate the allegations in the relator's complaint. In the Tenth Amended Complaint, the relator alleges that Bayer violated the FCA with respect to Medicare Part A claims including Trasylol submitted on or after August 5, 1999. *See* TAC ¶¶ 330, 340, 352, 361, 372, 381, 393, 399, 405, 411. The relator further alleges that Bayer violated the FCA with respect to Part B claims including Avelox submitted on or after July 24, 2000. *See* TAC ¶¶ 420, 426. Thus, 43 of the 48 months from January 1996 through July 1999 that the aged paper records cover fall outside the timeframe of the litigation with respect to Trasylol, and the entire four-year period (1996-1999) falls outside the timeframe of the litigation with respect to Avelox.

   B.   The Aged Paper Records Are Irrelevant To The Materiality Inquiry Under *Escobar* And This Court's April 23, 2019, Decision In This Case.

The aged paper records are also irrelevant to Bayer's claimed need for discovery -- the materiality inquiry -- under both the Supreme Court's decision in *Universal Health Servs., Inc. v.*

*United States ex rel. Escobar,* 136 S. Ct. 1989 (2016) and this Court's April 23, 2019, decision on the parties' cross motions for partial summary judgment.[5] *See United States ex rel. Simpson v. Bayer,* 376 F. Supp. 3d 392 (D.N.J. 2019) (*Bayer*). Indeed, both *Escobar* and this Court's recent decision place key limitations on the materiality inquiry and thus the scope of any discovery sought with respect to that inquiry.

In *Escobar*, the Supreme Court identified several factors as relevant to the materiality analysis under the FCA, but made clear that no one factor was dispositive. *Escobar*, 136 S. Ct. at 2001 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011)). The Court explained that materiality under the FCA turns on: (1) whether the applicable requirement is a condition of payment; (2) whether the requirement allegedly violated goes to the "essence of the bargain;" (3) whether the violation is significant or trivial, and (4) what actions the government has taken when it learns of the same or similar violations. *Escobar*, 136 S. Ct. at 2003.

With respect to the first factor, this Court has already declared that "both the AKS and the 'reasonable and necessary' requirement in 42 U.S.C. 1396y(a)(1)(A) are designated as conditions of payment under Medicare." *Bayer*, 376 F. Supp. 2d at 414. With respect to the second factor, guided by Third Circuit precedent, this Court has also determined that "in the context of an underlying AKS violation '[t]he Government does not get what it bargained for when a defendant is paid . . . for services tainted by a kickback.'" *See id.* at 411 (*quoting United States ex rel. Greenfield v. Medco Health Solutions*, 880 F. 3d 89, 97 (3d Cir. 2018)). With respect to the third factor, the requirements at issue in this case (compliance with the AKS and Medicare's "reasonable and necessary" requirements) are significant, not trivial, as Congress has expressly legislated that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of the [False Claims Act]." 42 U.S.C. § 1320a-7b(g); *Greenfield*, 880 F.3d at 95; *see also* 42 U.S.C. 1395y(a)(1)(A) ("no payment may be made [under the Medicare statute] for any expenses incurred for items or services which ... are not *reasonable and necessary* for the diagnosis or treatment of illness or injury").

While these factors weigh in favor of a determination of materiality, this Court left a narrow opening for Bayer to argue against materiality on the fourth factor by offering "proof that 'the Government pays a particular claim in full despite its *actual knowledge* that certain requirements were violated' or 'regularly pays a particular type of claim in full despite its *actual knowledge* that certain requirements were violated, and has signaled no change in position.'" *Bayer*, 376 F. Supp. 3d at 415 (emphasis added) (quoting *Escobar*, 136 S. Ct. at 2003-05).

Only this fourth factor has anything to do with Government action, but its focus is limited to the Government's payment of a claim or type of claim when the Government has "*actual*

---

[5] In its cross-motion for partial summary judgment, Bayer argued that compliance with the Anti-Kickback Statute and Medicare's "reasonable and necessary" requirements was immaterial as a matter of law because Trasylol was reimbursed under a "bundled" payment for surgeries and the Government paid the same amount for the surgery regardless of whether Trasylol was used. This Court denied Bayer's motion for partial summary judgment and expressly "reject[ed] Bayer's argument that the Government's payment amount is dispositive on the question of materiality. The clear focus of the materiality inquiry under [*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)] is not the *amount* of payment, but rather the 'government's payment *decision.*'" *Bayer*, 376 F. Supp. 3d at 410 (quoting *Escobar*, 136 S. Ct. at 2002) (emphasis in original).

*knowledge* that certain requirements were violated." *Escobar*, 136 S. Ct. at 2003 (emphasis added). As several courts have noted, however, "actual knowledge" is not the same as awareness of *allegations* of violations. *See United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) ("mere awareness of allegations concerning non-compliance is different from knowledge of actual non-compliance"); *United States ex rel. Rahimi v. Rite Aid Corp.*, 2019 WL 1426333, *8 (E.D. Mich. Mar. 30, 2019) ("Rite Aid's argument conflates 'actual knowledge that certain requirements were violated' with actual knowledge of allegations that certain requirements were violated"); *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 1344365, *11 (E.D.PA April 17, 2017) ("mere knowledge of allegations regarding noncompliance is insufficient to prove actual knowledge of noncompliance").

Here, the aged paper records dating from 1996 to 1999 have no bearing whatsoever on this fourth factor because documents that predate the relator's *qui tam* complaint by several years could not possibly contain evidence of "actual knowledge" of the violations alleged in the relator's complaint. Furthermore, after the filing of the relator's *qui tam* complaint, at most, the Government would have become aware of allegations of non-compliance, not "actual knowledge" of non-compliance. Because these aged paper records could not possibly reveal how the Government would act if it possessed "actual knowledge," they are demonstrably irrelevant to the fourth factor in the materiality assessment.

Beyond this fatal defect, Bayer's Rule 45 subpoena runs afoul of important limitations that *Escobar* itself imposes on the scope of the materiality inquiry. First, applying *Escobar*, this Court succinctly stated that "the goal of this Court's materiality analysis is to determine what the Government would have done *had it known* about the alleged noncompliance involving Trasylol." *Bayer*, 376 F. Supp. 3d at 414 (emphasis in original)(citing *Escobar*, 136 S. Ct. at 2004). In other words, the materiality inquiry focuses on the impact of non-compliance on the Government's payment decisions as to *Trasylol or Avelox*, and not the impact of some hypothetical non-compliance with respect to "any facet of the Medicare program."

Second, "*Escobar* instructs courts to examine the Government's practice of payment or nonpayment of claims *based upon the same underlying violation* – claims that are noncompliant 'with *the particular* statutory, regulatory, or contractual requirement' at issue." *Id.* at 414 (emphasis added). The "underlying violation[s]" alleged in this case concern the payment of kickbacks to induce prescriptions covered under Medicare in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b, and the off-label promotion of drugs, leading to the violation of Medicare's "reasonable and necessary" requirement. Therefore, as stated by this Court, "the focus [of the materiality inquiry] is on the Government's actual or likely conduct with respect to the payment of claims that are noncompliant with the AKS or with Medicare's "reasonable and necessary" requirement as it relates to off-label drug uses – the two alleged underlying violations in this case." *Id.* at 415. Absent these limitations, every materiality inquiry in an FCA healthcare case would turn into a boundless and untethered inquisition into the Government's payment practices for every type of benefit under Medicare. Nothing in *Escobar* or this Court's April 23, 2019, decision remotely endorses such fishing expeditions.

Applying these principles, Bayer's Rule 45 subpoena seeks information far outside the limitations prescribed by *Escobar* and this Court. Bayer's subpoena is not limited to Trasylol or

Avelox or the particular claim or type of claims at issue in this litigation. Rather, it demands the production of documents and information "in any way related" to "claims received under any facet of the Medicare program" over a twenty-three year period (1996 to the present). *See* Request Nos. 1, 8, 9, 14, 15.

Nor is Bayer's subpoena limited to the same underlying violations alleged in the relator's complaint – violations of the AKS and Medicare's "reasonable and necessary" requirement related to the off-label usage of drugs. Instead, for example, it seeks "[a]ll documents explaining why CMS denied any claim received under any facet of the Medicare program." *See* Request No. 15. The subpoena thus sweeps into its scope a vast amount of irrelevant information having nothing to do with the materiality inquiry or the claims, type of claims, or violations at issue in this litigation, including the hundreds of millions of pages of aged paper records that Bayer has expressly refused to exclude.

Here, the aged paper records that are the subject of this motion consist of approximately 540 million Medicare Part B paper claims, Medicare Part B claim appeal files, medical records to support Medicare Part B claims, provider inquiries about Medicare Part B claims, and beneficiary inquiries about Medicare Part B claims. *See* Klots Decl. ¶¶ 15, 18. They also consist of approximately 21 million Medicare Part A paper claims, Medicare Secondary Payor files, Medicare Part A claims appeal files, medical records to support Medicare Part A claims, and provider inquiries about Medicare Part A claims. *See id.* Finally, they also contain overpayment case files, provider enrollment records, Medicare program financial files, and other CMS or Health Care Financing Administration (HCFA) administrative documents. *See id.*

Given the breadth of the Medicare program and the numerous types of benefits, items, and services it covers, it is safe to conclude that almost all of the 560 million Medicare Part A and Part B paper claims or related paper documents from 1996 through 1999 concern Medicare claims other than those involving Trasylol or Avelox. Because these claims likely do not concern Trasylol or Avelox and largely predate the time frame of this litigation, they can have no bearing on the materiality of the violations alleged in the relator's complaint with respect to the payment of claims involving Trasylol and Avelox submitted after August 1999.

Even if some small portion of the nearly 560 million Part A and Part B claims were within the relevant time period, the paper claims are incomplete because they do not contain the final disposition or outcome of the claim. *See* Klots Decl. ¶¶ 14, 29. In other words, these "as submitted" paper claims lack the "payment decision" on the claim. *See id.* Therefore, these aged paper records could not possibly shed any light on the Government's payment decisions, which is the critical question under *Escobar*. Nor is there anything that would shed any light on the Government's payment decisions in the other non-claim paper records, which include overpayment case files, provider enrollment records, Medicare program financial files, and other CMS or Health Care Financing Administration (HCFA) administrative documents. *See id.* ¶ 18.

Furthermore, nothing on the face of these aged paper claims (or even electronic claims for that matter) would reveal the existence of a kickback or non-compliance with the AKS. For, as noted by this Court, "all fraud is disguised – until it is not." *Bayer*, 376 F.Supp.3d at 416. Therefore, it is highly unlikely that an entity paying a kickback would indicate its violation of the

Case 2:05-cv-03895-JMV-JAD   Document 363   Filed 10/03/19   Page 10 of 12 PageID: 9476
Page 10

AKS on the face of the claim. It is even less likely that the claim would evidence a violation of the AKS when an entity pays a kickback for an item or service that is included in a claim for payment submitted by a third party – precisely the situation in this case.

Given the irrelevance of the aged paper records to the materiality inquiry, Bayer's refusal to either exclude them from the scope of the subpoena or review a sample of them, Bayer's subpoena amounts to nothing more than an impermissible "fishing expedition." *See* ECF No. 342 at 2 ("courts will not permit parties to engage in fishing expeditions"); *see also Ranke v. Sanofi-Synthelabo*, 436 F.3d 197, 204 (3d Cir. 2006) (noting that reversal would allow the litigant to "conduct a fishing expedition," which the court "cannot do").

      C. The Extreme and Undue Burden and Expense of Sifting Through Hundreds of Millions of Pages of Aged Paper Records of No Likely Relevance is Not Proportional To the Needs of the Case.

As set forth above, Rule 26 requires, among other things, that any discovery be proportional to the needs of the case. In this case, Bayer's demand that CMS retain and review hundreds of millions of pages of aged paper records with no demonstrable relevance to the materiality issue is wholly disproportional to any need and would pose an extreme and undue burden on the agency. As explained in the Klots declaration, the storage costs alone for these aged paper records would be at least $23,000 per month based upon a monthly storage cost of $0.25 per box. *See* Klots Decl. ¶ 22. Even if there was some arguably relevant information within the hundreds of millions of pages of aged paper records, there is no reasonable way to identify such information without conducting a page-by-page review. These aged paper records are not themselves electronically searchable, and an electronic search of the manifests for the words "Trasylol" or "Avelox" yielded no hits. Klots Decl., ¶ 17. A page-by-page review would require over 450,000 hours of staff time at a cost of at least $23 million – a cost that would ultimately be borne by the taxpayer. Moreover, such an effort would take a minimum of 16 months and up to 8 years for some MACs to complete. *See id.* ¶ 22.

Given Bayer's own refusal to review even a sample of the aged paper records, there is no justification for requiring CMS to sift through hundreds of millions of pages of aged paper records in the mere hopes of finding something of possible relevance or to confirm that they are in fact irrelevant. The extreme burden and expense of such an undertaking vastly outweighs any benefit under Rule 26(b)(1) and would divert critical resources away from CMS's core mission of providing and administering healthcare services to the public. *See* Klots Decl. ¶¶ 23, 30-31, 33. *See Cristobal v. County of Middlesex,* 2018 WL 2198797, *3 (D.N.J. 2018) (granting motion to quash subpoena, finding "that requiring the Commission to dedicate a staff member to the full-time, weeks long, search would be unduly burdensome").

      D. Bayer has Failed Its Express Duty Under Rule 45(d)(1) To Avoid Imposing Undue Burden or Expense

Rule 45 expressly provides that "[a] party or attorney responsible for issuing a subpoena *must take reasonable steps* to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1) (emphasis added). Bayer has ignored this mandatory duty,

even after CMS informed Bayer about the burden and expense associated with the subpoena and expressly reminded Bayer of this obligation.

Here, there are far less burdensome and costly alternatives to the discovery Bayer seeks. As noted in the Klots Declaration, the overwhelming majority of the aged paper records at issue in this motion consist of approximately 560 million Part A and Part B "as submitted" paper claims. Klots Decl. ¶ 15. To the extent Bayer deems claims data relevant to the materiality inquiry, electronic claims data can be produced in response to appropriately framed and narrowly targeted requests covering a defined set of claims and a relevant time period. If Bayer submits such a request, the Government is prepared to produce such electronic claims data upon Bayer's payment of the normal processing charge for such information.[6]

Rather than attempt to reach a compromise with the Government to modify the subpoena, Bayer has suggested in discussions with the Government that if it finds Bayer's discovery too burdensome, the Government may seek a dismissal of the relator's complaint under 31 U.S.C. § 3730(c)(2)(A). Under the FCA, the Government may "dismiss the [*qui tam*] action notwithstanding the objections of the [relator]" as long as the relator has notice "of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). By insisting that the Government either accede to its unreasonable discovery demands or dismiss the case, Bayer misunderstands its own obligations in this situation. The existence of this dismissal authority does not relieve Bayer of its independent and affirmative duty under the Federal Rules to avoid imposing an undue burden on the recipient of a subpoena, including the Government, which is not a party to this case. *See* Fed. R. Civ. P. 45(d)(1).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that pursuant to Fed. R. Civ. P. 45(d)(3), the Court quash or modify Bayer's March 13, 2019, subpoena served upon CMS to the extent it applies to aged paper records from 1996 through 1999.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

By: *Charles Graybow*/nm
CHARLES GRAYBOW
NICOLE F. MASTROPIERI
Assistant United States Attorneys

---

[6] We understand Bayer's subpoena to encompass electronic claims data. At the first discovery conference held on April 11, 2019, Bayer's counsel was asked if it wanted electronic claims data produced. Bayer's counsel responded that it was not seeking the production of electronic claims data at this time. Despite subsequent queries to Bayer's counsel about the production of electronic claims data, Bayer has not provided a definitive answer.

                                        ANDY J. MAO  
                                      JAMIE A. YAVELBERG  
                                      SANJAY M. BHAMBHANI  
                                      Civil Division  
                                      Commercial Litigation Branch  
                                      P.O. Box 261, Ben Franklin Station  
                                      Washington, D.C.  20044  
                                      (202) 305-0546  

                                      *Attorneys for the United States*

cc:      All Counsel of Record (via ECF)