**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, LAURIE SIMPSON<br><br>    *Plaintiff*,<br><br>v.<br><br>BAYER A.G., *et al.*<br><br>    *Defendants*, | Civil Action No. 05-3895<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court on an appeal from the ruling of Special Master Dennis M. Cavanaugh, U.S.D.J. (Ret.) denying the motion of non-party United States (the "Government") to shift the costs and expenses that the Centers for Medicare and Medicaid Services ("CMS") incurred because of Defendants' subpoena (the "Subpoena"). The Court reviewed the parties' submissions, D.E. 378 ("Br."), D.E. 382 ("Opp."), D.E. 383 ("Reply") and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the Government's appeal is denied.

 **I.  BACKGROUND**

  This case arises under the False Claims Act. *See e.g.*, D.E. 213 ¶ 4; *see* 31 U.S.C. § 3729 *et seq.* The Tenth Amended Complaint is the operative pleading. *See* D.E. 213. Relator seeks to recover for false claims and statements that Defendants allegedly made in connection with their "unlawful marketing, including off-label marketing and payment of kickbacks, . . . to increase the market shares of its prescription drugs Trasylol and Avelox." *See e.g., id*. ¶ 9. The Government declined to intervene on February 10, 2010. D.E. 16. Now before the Court is the Government's

appeal of the Special Master's ruling denying the Government's motion to shift costs under Fed. R. Civ. P. 45.  D.E. 377.

On March 13, 2019, Defendants served the Subpoena on CMS.  D.E. 363-2.  On October 3, 2019, the Government moved to quash or modify the Subpoena as to the portions of document request numbers one, eight, nine, fourteen, and fifteen.  The Government contends that those requests would have required CMS to produce, in effect, "230 million pages of aged Medicare paper records dating from 1996 through 1999, contained in over 91,000 boxes dispersed at several government storage sites around the country that were scheduled for disposal," (the "aged paper records").  See D.E. 363 at 1; see also D.E. 363-1 ("Klots Decl.") at 8, ¶ 19.  On March 26, 2020, the Special Master granted the Government's motion to quash the Subpoena.   See D.E. 378-12.

As to the aged paper records, the Special Master found that Defendants failed to meet their burden "to demonstrate that the boxes containing the aged paper records are relevant." *Id*. at 10. The Special Master reasoned that "the vast majority of the [aged paper records] are outside the discovery period germane to this case" because the "[Tenth Amended Complaint] clearly only alleges that the Causes of Action are based on fraudulent claims for Trasylol on or after August 5, 1999 and fraudulent claims for Avelox on or after July 24, 2000." *Id*. at 10.  The Special Master concluded that "the boxes containing paper records from 1996, 1997, and 1998 are outside the discovery period and not relevant[.]" *Id*. at 11.  The Special Master also found that Defendants failed to demonstrate that the boxes that could contain aged paper records for Trasylol in 1999 held information that could not be obtained from other sources. *Id.* Relying on the Government's declaration, *see* Klots Decl. at 4-5, ¶¶ 13-14, the Special Master explained that the data contained on the face of the aged paper records was available through the "National Claims History data base at the CMS data center" and that Defendants failed to explain how that database was "inadequate

and why the paper records themselves must be provided." D.E. 378-12 at 11. The Special Master further questioned the relevance of the aged paper records given that they "do not include the information related to payment decisions on the claims." *Id*.; *see also* Klots Decl. at 5 ¶ 14. The Special Master opined that it would be "difficult to ascertain how [Defendants] could 'learn whether the Government consistently refuses to pay claims in the mine of run cases based on noncompliance with the two legal requirements at issue' when payment decisions are not included with the aged paper records." D.E. 378-12 at 11. The Special Master found that, "at most," Defendants had argued that the aged paper records might contain "potentially relevant information" to their defense, which did not meet the discovery standard under Fed. R. Civ. P. 26. *Id*. (internal quotation marks omitted). The Special Master therefore quashed the Subpoena "to the extent it applie[d] to the aged Medicare paper records dating from 1996 through 1999." *Id*. at 12. The Special Master also denied Defendants' motion for reconsideration. D.E. 376.

The Government then moved to shift costs under Fed. R. Civ. P. 45 for CMS's loss of appropriated funds and storage expenses incurred because of its compliance with the Subpoena. D.E. 373 at 8-10; D.E. 374 at 2-7.[1] The Government contended that cost shifting was appropriate under Fed. R. Civ. P. 45(d)(1) and Fed. R. Civ. P. 45(d)(2)(B).

---

[1] It appears that the Government first raised the issue of cost shifting in its opposition to Defendants' motion to reconsider. *See* Br. at 12-13; *see also* D.E. 373 at 8-10; D.E. 374 at 2-7. Defendants objected. *See* D.E. 377 at 2 ("Bayer argues that an opposition to a motion for reconsideration is not an appropriate forum to raise new cost-shifting issues."); *see also* Opp. at 11 n. 5 (arguing the Government's claim for costs "was forfeited because an opposition to a reconsideration motion is too late . . . to raise new arguments and issues . . . [and because] the Government never gave 'notice of its intention to seek costs, or conditioned its compliance on reimbursement' until its opposition to Bayer's motion for reconsideration." (citing *See P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001), *Lee v. Va. State Bd. of Elections*, No. 3:15CV357, 2016 WL 6915308, at *3 (E.D. Va. Sept. 2, 2016))). However, the Government acknowledges the Special Master did not ultimately rule on this argument, Opp. at 11 n. 5, and Defendants have not appealed the Special Master's decision not to do so.

The Special Master denied the Government's motion as to Rule 45(d)(2)(B). D.E. 377 at 4. That rule provides as follows:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection . . . . If an objection [to a subpoena] is made, the following rules apply:
>
> > (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
> >
> > (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(d)(2)(B). Applying a "plain reading of Rule 45 and courts' subsequent interpretations" the Special Master found that "Rule 45(d)(2)(B)(ii) applies only where a court has issued an order compelling production in response to a motion by the party seeking discovery." D.E. 377 at 4 (citing *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 425 (D.N.J. 2004)). The Special Master thus concluded that because he had not issued an order compelling CMS to comply with the Subpoena, Rule 45(d)(2)(B) was inapplicable. *Id*.

The Special Master also denied the Government's motion as to Rule 45(d)(1). D.E. 377 at 6. The rule provides as follows:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). The Special Master first found that sanctions under Rule 45(d)(1) are "more discretionary in nature." D.E. 377 at 4. The Special Master explained that his previous

4

finding that the Subpoena should be quashed as to the aged paper products did not necessarily mean that cost shifting was appropriate. D.E. 377 at 6 (citing *See Havens v. Mar. Commc'ns/Land Mobile, LLC*, No. CIV. 11-993 KSH CLW, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014)). Instead, the Special Master said that sanctions "are generally awarded only in the most egregious of circumstances, such as when a party has clearly breached Rule 45." D.E. 377 at 5. The Special Master then found that the Subpoena was not issued in bad faith or for an improper purpose. *Id*. at 6. The Special Master further reasoned that although he found that Defendants failed to establish relevancy as to the aged paper products "such overbreadth may sometimes result from normal advocacy and does not necessarily give rise to sanctions." *Id*. at 5-6. As a second basis for denying sanctions, the Special Master reasoned that "CMS was not required to undertake the task of collecting, analyzing, copying, or producing th[e] aged paper products" and that the Government had failed to adduce authority supporting the proposition that "the costs and expenses the Government seeks to shift to [Defendants] are cognizable under Rule 45(d)(1), particularly when no documents were actually produced[.]" *Id*. at 6. Accordingly, the Special Master denied the Government's motion as to Rule 45(d)(1). *Id*.

The current appeal followed.

## II.     STANDARD OF REVIEW

Pursuant to this Court's Order, D.E. 328, appointing the Special Master, the Special Master exercises "authority . . . coextensive with those of a Magistrate Judge in the District of New Jersey." D.E. 328 at 4. This Court further ordered that "any appeal of any action or decision made by the special master shall be filed with the Court pursuant to Local Civil Rule 72.1(c)." *Id*. Accordingly, the Court applies the same standard here as it would in reviewing an appeal from a decision by a magistrate judge.

A magistrate judge may decide any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A).  The parties agree that the Special Master's ruling resolved a non-dispositive matter.  Br. at 16; Opp. at 10.  A district court may only reverse a magistrate's decision on these matters if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation omitted)).  Under this standard, a district court "will not reverse the magistrate judge's determination even if the court might have decided the matter differently."  *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002).  The district court will, however, "conduct a de novo review of a magistrate judge's legal conclusions." *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).  "Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006).  An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Ebert v. Twp. of Hamilton*, No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2016).

### III.   ANALYSIS

#### A.   Fed. R. Civ. P. 45(d)(1) [2]

The Government appeals the Special Master's determination that Defendants' conduct did not rise to the level of egregiousness necessary for sanctions under Rule 45(d)(1). Br. at 18-27. The Government first argues that the Special Master improperly disregarded the breadth and burden of Defendant's subpoena to CMS and Defendant's failure to address CMS's concerns regarding costs. *See* Br. at 20-22. The Government next argues that the Special Master incorrectly found that Defendants' subpoena was the product of normal advocacy. Br. at 22-23. The Government points to Defendants' refusal to review a sample of the aged paper records in question to ascertain their relevance. *Id*. at 23. In addition, the Government states that the Special Master erred by failing to address Defendants' failure to take steps to avoid imposing an undue burden or expense on CMS. *Id*. at 24-25. The Government surmises that the Special Master erroneously overlooked Defendants' failures based on the improper reason that the "subpoena was quashed as to the aged paper records and CMS was not required to undertake the task of collecting, analyzing, copying, or producing those aged paper records." *Id*. at 25. The Government concludes that, because Defendants failed to make efforts to reduce the expense and burden on CMS, the Special Master was obligated to shift costs under Rule 45(d)(1). Br. at 26-27.

Defendants counter that they made good faith attempts to reduce the burden on CMS by (1) engaging in meet-and-confers and exchanging multiple letters and communications with CMS to "narrow and guide the Government's search efforts," (2) asking the Relator if "she was willing to agree to the Government's proposed temporal restriction," (3) offering to sample documents at

---

[2] After the 2013 amendments to the Federal Rules of Civil Procedure, "[s]ubdivision (d) [of Rule 45] contains the provisions formerly in subdivision (c)." *See* Fed. R. Civ. P 45, ADVISORY COMMITTEE NOTES (2013 amend.).

its own costs, and (4) proposing a "reasonable stipulation." Opp. at 13. Defendants further contend that the Special Master's decision was correct because CMS did not have to produce any of the documents and because the Government has failed to provide authority for the proposition that it may recover its storage costs for such information.

As noted, Rule 45(d)(1) provides in relevant part that a party responsible for issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that a court "must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). The question is whether Defendants took "reasonable steps to avoid imposing undue burden or expense" on CMS. *Id.* However, "[i]t does not automatically follow that because the [Special Master] quashed the [S]ubpoena[], [Defendants] acted unreasonably in issuing or relying on them." *See Havens v. Mar. Commc'ns/Land Mobile, LLC*, No. CIV. 11-993 KSH CLW, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014).

The Special Master's denial of sanctions under Rule 45(d)(1) was not clearly erroneous. This Court accepts the Special Master's finding that the Subpoena was "not issued in bad faith or for an improper purpose" because the Special Master was intimately familiar with the Government's motion to quash. *See* D.E. 378-12. Additional evidence supports the Special Master's ruling. Defendants' letter enclosing the Subpoena explained that the Subpoena's purpose was to "understand in detail CMS's process for receiving, reviewing, and deciding whether to pay Medicare claims" and that its "production requests are chiefly directed to these questions[.]" D.E. 373-8 at 2. This stated purpose supports a legitimate objective and undercuts the argument that the Subpoena was issued to harass CMS. In addition, the email chain attached as Exhibit 6 to the Government's appeal shows that, after at least one meet-and-confer, Defendants significantly

8

narrowed the scope of many of their document requests.  D.E. 387-7, Ex. 6 at 7-9.  Evidence also indicates that Defendants and CMS engaged in at least another meet-and-confer specific to the aged paper records.  D.E. 378-8, Ex. 7 at 3 ("We had a meet-and-confer on July 18, 2019 to discuss the memorandum.").  Further, to alleviate CMS's burden, Defendants offered a potential stipulation as "an alternative to preserving and reviewing the documents," *id*. at 4, and offered to "review a meaningful sample" of the aged paper records to "avoid burdening the Court."  D.E. 378-9, Ex. 8 at 3-6.  The stipulation was unacceptable to CMS, *see* Br. at 9, but it does reflect an effort by Defendants to reduce the burden on CMS.  Defendants' offer to review the aged paper records came after the Government moved to quash the Subpoena, but that does not automatically mean that this effort cannot be considered as a "reasonable step[]" under the Rule 45(d) analysis.  It appears Defendant's offer to review a sample of the aged paper records was an effort to resolve – and avoid the costs of further litigating – the Government's motion to quash.

      The evidence also supports the Special Master's finding that the Government failed to prove the Subpoena imposed an undue burden.  *See* D.E. 377 at 6.  There is no dispute that CMS was not obligated to "undertake the task of collecting, analyzing, copying, or producing th[e] aged paper records."  *Id*.; *see also* Klots Decl. at 2, ¶ 5 ("[M]y Memorandum analyzed the nature and scope of the burden imposed on CMS *if* the boxes of old . . . paper records were deemed to be within the scope of the subpoena and required page by page review." (emphasis added)).  The Government merely identified the location of the aged paper records and was not required to undertake any further review – save the limited information gathering described in the Klots Declaration, *see e.g.*, Klots Decl. at 5-6, ¶¶ 16-18; *see also* D.E. 366 at 2, ¶ 8 – before the Subpoena was quashed as to those documents.  *See generally* Klots Decl.  The Special Master was permitted to rely on this fact in denying sanctions.  *SAJ Distributors, Inc. v. Sandoz, Inc.*, No. CIV.A.08-

1866(JAP), 2008 WL 2668953, at *3 (D.N.J. June 27, 2008) ("Defendant may have been inconvenienced by Plaintiff's request, that alone is not enough to meet the undue burden standard pursuant to Rule 45, particularly given the outcome, where Defendant has not even been required to produce any documents[.]")); *Havens v. Mar. Commc'ns/Land Mobile, LLC*, No. CIV. 11-993 KSH CLW, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014) (denying sanctions based on, among other things, the court's finding that the individuals subject to the subpoenas had "not undertaken the expense or inconvenience of compliance.")). Based on this evidence and the Special Master's findings that the Subpoena was not issued in "bad faith or for an improper purpose" the Court concludes that the Special Master's denial of sanctions under Rule 45(d) was not clearly erroneous. The Government's appeal of the Special Master's denial of sanctions under Rule 45(d)(1) is denied.

### B. Fed. R. Civ. P. 45(d)(2)(B)(ii)

The Government also argues that the Special Master erred by refusing to shift costs to Defendant under Rule 45(d)(2)(B)(ii). Br. at 28-29. Specifically, the Government takes issue with the Special Master's conclusion that the rule did not apply because there was no court order "compelling CMS to comply with the subpoena." *Id*. at 28. The Government contends that there is persuasive authority supporting the proposition that a lawyer-issued subpoena constitutes a court order to preserve documents. *Id*. at 28-29. Defendants counter that the plain language of Rule 45(d)(2)(B) indicates that the rule is only operative when a court orders compliance with a subpoena. Opp. at 19. Defendants further contend that, even assuming Rule 45(d)(2)(B)(ii) applied, the Government failed to address factors that courts in this district typically address before shifting costs under that rule. *Id*. at 20. Defendants say consideration of those factors supports the conclusion that costs should not be shifted. *Id*. Because this aspect of the Government's appeal

10

centers on the Special Master's legal conclusion that Rule 45(d)(2)(B)(ii) did not apply, the Court applies a *de novo* review. *Sullivan*, 183 F.R.D. at 127.

The Court agrees with the Special Master's conclusion that cost shifting under Rule 45(d)(2)(B)(ii) is inapplicable. In relevant part, the rule provides that a court must "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" when issuing "an order compelling production or inspection" of documents upon motion of "the serving party." Fed. R. Civ. P. 45(d)(2)(B). A plain reading of the rule indicates that the provision is inapplicable because "the serving party" – here Defendants – did not make a motion, the Government did, and because the Special Master's order did not "compel[] production or inspection" but instead blocked production of the aged paper records. *See id*. The Government's argument that the Subpoena constitutes a court order within the meaning of Rule 45(d)(2)(B) is inconsistent with a plain reading of the rule. The rule contemplates a set of facts the Government concedes are not present here – namely, a court order compelling the production of documents in response to a motion to compel made by the party who served the subpoena which was objected to. *Id*.

Other court decisions agree with this interpretation of Rule 45(d)(2)(B). *See In re: Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018) ("Thus, *if an objection is made and the court orders the non-party to comply*, the court must protect a non-party from significant expenses resulting from compliance." (emphasis added)); *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 425 (D.N.J. 2004) ("When a court compels document production, it must protect a non-party from significant production expenses. Absent an order, a non-party bears its own production expenses."); *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 534 (C.D. Cal. 2014) (stating that a "court must shift 'significant expenses resulting from compliance' to the requesting

11

party" when "*a court* orders a non-party *to comply* with a subpoena over that non-party's objection." (emphasis added)).

The Government's citations to the 1991 Advisory Committee Notes to Rule 45 and the cases cited within are unavailing. *See* Br. at 28-29. Specifically, the note the Government cites to falls under a discussion of the changes made to "Subdivision (a)" whereas the Advisory Note discussing "Subdivision (c)"[3] provides, "[a] non-party *required* to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court." *See* Fed. R. Civ. P 45, ADVISORY COMMITTEE NOTES (1991 amend.). In addition, subsequent Advisory Committee Notes make clear that it is not a subpoena that automatically triggers cost shifting under Rule 45(d)(2)(B) – as the Government contends – but an order compelling compliance after objection to the subpoena by the receiving party. *See* Fed. R. Civ. P 45, ADVISORY COMMITTEE NOTES (2006 amend.) ("Rule 45(c)(2)(B) permits the person served with the subpoena to object to it and directs that an *order requiring compliance* 'shall protect a person who is neither a party nor a party's officer from significant expense resulting from' *compliance*." (emphasis added)).

Finally, none of the cases the Government cites analyze cost shifting under Rule 45(d)(2)(B) or earlier iterations of that rule, much less support the proposition that cost shifting is appropriate under the rule absent a *court order* compelling compliance with a subpoena. *See Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ), Inc.*, 893 F.2d 605, 610 (3d Cir. 1990); *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975) ("The authority to take the action [the district court] took against the appellant could only come from Rule 45(f).")). In *Hyatt*'s limited discussion of Rule 45(c)(2)(B) – Rule

---

[3] As discussed above at page 7, n. 3, prior to the 2013, Rule 45(d)'s language was codified under subsection (c). *See* Fed. R. Civ. P 45, ADVISORY COMMITTEE NOTES (2013 amend.).

12

45(d)(2)(B)'s predecessor – the Seventh Circuit distinguished that rule from Rule 45(e) and noted the following:

> Under Rule 45(c), intervening court involvement is required prior to initiation of contempt proceedings if the recipient of the subpoena serves a written objection on the party or attorney designated in the subpoena . . . On receipt of such an objection, the party serving the subpoena may move the issuing court for an order compelling production or inspection and the production or inspection may be required only as directed in the order.

*Hyatt*, 621 F.3d at 694. *Hyatt*'s discussion of the procedures under Rule 45(c)(2)(B) undercuts the Government's position here. The Government's appeal of the Special Master's denial of costs under Rule 45(d)(2)(B) is denied.

### IV.    CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 2nd day of February, 2021,

**ORDERED** that the Government's appeal, D.E. 378, is **DENIED**.

.

                                                     John Michael Vazquez, U.S.D.J.