# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA ex rel.
LAURIE SIMPSON,

*Plaintiff*,

v.

BAYER CORPORATION; BAYER
HEALTHCARE PHARMACEUTICALS,
INC.; BAYER HEALTHCARE LLC; and
BAYER AG,

*Defendants*.

Case No. 05-cv-3895(JMV)

Hon. John Michael Vazquez

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# STONE & MAGNANINI LLP'S MOTION
# FOR ATTORNEYS' FEES, COSTS AND EXPENSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

FACTUAL AND PROCEDURAL HISTORY ........................................................ 2

ARGUMENT ............................................................................................................ 4

    I.    BECAUSE SM MET ITS PRIMA FACIE BURDEN, ITS
    CLAIMED AWARD IS PRESUMPTIVELY REASONABLE........... 5

    II.   BAYER DOES NOT REBUT THE PRESUMPTION THAT
    SM'S REQUEST IS REASONABLE .................................................. 6

        A.    Bayer's Argument That This Court Can Not Award Fees
        for Baycol Is Factually Baseless and Legally Meritless ............. 7

        B.    Bayer's Request For A "Lack Of Success" Proportionate
        Reduction Strays From Law And Is Factually Untenable ........ 11

        C.    Bayer's Proffered Expert Is Entitled To No Weight ................ 13

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*A. S. v. Colts Neck Bd. of Educ.*,
190 F. App'x 140 (3d Cir. 2006) ........................................................... 12

*AMA Realty LLC v. 9440 Fairview Ave. LLC*,
No. 13-cv-457 (JMV) (MF), 2020 U.S. Dist. LEXIS 209041
(D.N.J. Nov. 9, 2020) ........................................................................... 12

*Avaya Inc. v. Telecom Labs, Inc.*,
2016 U.S. Dist. LEXIS 194346 (D.N.J. Sep. 7, 2016) ...................... 10

*Butt v. United Bhd. of Carpenters*,
999 F.3d 882 (3d Cir. 2021) ................................................................ 7

*Cunningham v. McKeesport*,
807 F.2d 49 (3d Cir. 1986) ................................................................ 12

*Damian J. v. School Dist. of Philadelphia*,
358 F. App'x 333 (3d Cir. 2009) ......................................................... 5

*Denton v. Danko Meredith, P.C.*
(In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices, & Prods.
Liab. Litig.), No. 3:19-CV-1365-NJR-GCS, 2020 U.S. Dist. LEXIS 25825
(S.D. Ill. Feb. 14, 2020) .................................................................... 11

*D'Ottavio v. Slack Techs.*,
No. 1:18-cv-09082-NLH-AMD, 2022 U.S. Dist. LEXIS 232448
(D.N.J. Dec. 27, 2022) ....................................................................... 7

*Evans v. Port Auth. of N.Y. & N.J.*,
273 F.3d 346 (3d Cir. 2001) ................................................................ 6

*Fox v. Vice*,
563 U.S. 826 (2011) ............................................................................ 5

*Galinis v. Bayer Corp.*,
*No. 09-cv-04980-SI*, 2020 U.S. Dist. LEXIS 10723
(N.D. Cal. Jan. 22, 2020) .................................................................. 11

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*
995 F.2d 414 (3d Cir. 1993) .............................................................. 10

*Haas v. Burlington Cty.,*
   No. 08-1102 (NLH/JS), 2019 U.S. Dist. LEXIS 163155
   (D.N.J. Sep. 3, 2019) ....................................................................... 7

*Hansen Found., Inc. v. City of Atl. City,*
   No. 1:19-cv-18608 (NLH/AMD), 2021 U.S. Dist. LEXIS 156765
   (D.N.J. Aug. 19, 2021) ................................................................... 12

*In re Baycol Prods. Litig.,*
   732 F.3d 869 (8th Circ. 2013) ......................................................... 9

*In re Veritas Software Corp. Sec. Litig.,*
   396 F. App'x 815 (3d Cir. 2010) .................................................... 11

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,*
   426 F.3d 694 (3d Cir. 2005) ........................................................ 6-7

*Keenan v. City of Philadelphia,*
   983 F.2d 459 (3d Cir. 1992) ........................................................... 10

*Lanni v. N.J.,*
   259 F.3d 146 (3d Cir. 2001) ............................................................ 5

*Sabinsa Corp. v. Herbakraft, Inc.,*
   No. 14-cv-04738 RBK-SAK, 2022 U.S. Dist. LEXIS 219396
   (D.N.J. Dec. 5, 2022) ..................................................................... 14

*Schneider ex rel. Est. of Schneider v. Fried,*
   320 F.3d 396 (3d Cir. 2003) ........................................................... 13

*Simring v. Rutgers,*
   634 F. App'x 853 (3d Cir. 2015) ...................................................... 7

*Smith v. New Jersey,*
   09-cv-4268 (JBS)(KMW), 2013 U.S. Dist. LEXIS 97353
   (D.N.J. July 11, 2013) .................................................................... 13

*Smith v. Philadelphia Hous. Authority,*
   107 F.3d 223 (3d Cir. 1997) ............................................................. 5

*Taylor v. USF-Red Star Express, Inc.,*
   212 F. App'x 101 (3d Cir. 2006)......................................................15

*UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.,*
   501 F.3d 283 (3d Cir. 2007) ................................................... 5, 6, 11

*United States ex rel Longhi v. Lithium Power Techs., Inc.*,
  575 F.3d 458 (5th Cir. 2009) ........................................................ 9-10

*United States ex rel. McKinney v. DHS Techs., LLC*,
  2016 WL 4592175 (M.D. Pa. Feb. 4, 2016) ................................... 12

*United States ex rel. Palmer v. C&D Techs., Inc.*,
  897 F.3d 128 (3d Cir. 2018) ........................................................ 5, 6

*Virtua Health, Inc. v. Diskriter, Inc.*,
  No. 19-21266, 2020 U.S. Dist. LEXIS 132218, 2020 WL 4282752
  (D.N.J. July 27, 2020) .................................................................. 7

**Statutes**

31 U.S.C. § 3730(b) ............................................................................ 8

**Rules**

Fed. R. Evid. 702 ............................................................................... 13

D.N.J. Local Civil Rules, R. 301.1(d)(5) ........................................... 2

F.R.C.P. 9(b) ...................................................................................... 9

In its opening brief, Stone & Magnanini LLP ("SM") laid out all the facts and legal grounds for its motion for legal fees. This includes the fact that SM extensively investigated and developed the case against Bayer, which resulted in a $46 million settlement. As a successful Relator, Ms. Simpson is statutorily due her attorney's fees, costs and expenses, which she has assigned to her Counsel, SM. SM dedicated significant time to meeting with and assisting the Government's investigation, including multiple meetings with senior representatives of the New Jersey United States Attorney's Office, the Department of Justice, and various State Attorneys General. SM also drafted detailed and costly complaints that laid out the claims, and even engaged in initial settlement discussions with Bayer's counsel, all of which ultimately led to the settlement.[1]

In an effort to assist the Court in fashioning the "rough justice" of FCA fee applications, SM removed fees for thirteen timekeepers and events that occurred after the Baycol matter was subject to the MDL. This resulted in a reduction of more than 10% of SM's fees. Further more, SM did not seek fees for work done by Boies, Schiller & Flexner LLP ("BSF") between 2009 and 2015 after SM spun off from BSF but while BSF continued to represent the Relator and prosecute the case. SM also used last year's rates to calculate its blended rate, even though case law would have allowed it to use this year's rates.

In its opposition, Bayer does not challenge SM's rates. Instead, it relies on irrelevant legal arguments about the Court's authority to award

---

[1] Defined terms from SM's Opening Memorandum of Law ("Br.") have the same meaning here. Defendants will be referred to, collectively, as "Bayer." Bayer's Opposition brief: "Opp." or "Opposition."

fees and the "audit" report of an out-of-state attorney with no experience in the highly-specialized field of either Federal or State False Claims Act ("FCA") litigation. All the work SM performed was performed in New Jersey or on cases filed, investigated and adjudicated in New Jersey. It is appropriate for this Court to award SM fees.

SM's opening brief was reasonable: it showed that SM is entitled to its reasonable lodestar, a lodestar based on the SM timekeepers' actual hours, contemporaneously recorded and billed at the rates it regularly charges to, and is paid by, its hourly clients. In arriving at its lodestar, SM did not seek time from all timekeepers, or for hours spent during the transition period while the SM timekeepers were assisting new counsel with learning about the case, or for hours spent when the Baycol case was transferred to the MDL. Nor did SM seek an upward success adjustment to its lodestar, even though, given the extreme contingency involved—and the degree of success achieved—precedent would support one. Instead, SM merely sought its reasonable, customary rate, for hours and expenses actually and necessarily incurred. The Motion should be granted.[2]

## FACTUAL AND PROCEDURAL HISTORY

Both defendants and their expert Mr. Studer seem to be confused about what happened at the start of these two settled cases, and therefore draw incorrect conclusions. The Trasylol and Avelox case was initially

---

[2] Bayer's assertion that this motion practice was necessitated by SM "stak[ing] out unreasonable positions" at the confidential mediation ordered by the Court is galling. Unlike Bayer, SM will not violate law mandating mediation secrecy (*e.g.*, D.N.J. Local Rules, R. 301.1(d)(5)); suffice to say that the briefing and record before the Court shed light on the veracity of Bayer's assertion.

filed as matter number 05-cv-3895 on August 5, 2005. It was unsealed on February 24, 2010. A second case against the same Defendants, with materially identical legal theories and causes of action, but arising from a different drug, Baycol, was filed on October 5, 2006, as matter number 06-cv-4796. An Amended Complaint was filed March 31, 2008, and docketed *nunc pro tunc* as of January 18, 2008. After the United States declined to intervene, the case was unsealed by this court on April 24, 2008, and transferred to the MDL in Minnesota on January 6, 2009.

When SM was retained by Relator Laurie Simpson, the matter was opened in the billing system as "BAYCOL" because Ms. Simpson worked in the Baycol Division at the Defendants. SM's initial work aimed at filing a single complaint against Bayer involving three drugs: Baycol, Trasylol and Avelox. These were not separate cases with separate claims; this was one case with the same claims, arising from three drugs produced by the same Defendants. After meeting with Relator, reviewing a prodigious number of documents, preparing initial disclosures, and working with the Government, SM began drafting a complaint.

Yet the Department of Justice and various United States Attorney's Office and State Attorneys General were intimately involved in investigating and reviewing Defendants for, specifically, the Baycol drug. SM was asked to attend several meetings with the Government about Baycol. And when SM told the Government it contemplated filing a complaint, it was asked not to include Baycol. SM honored this request, and thus in the initial complaint against Defendants on August 5, 2005, only included the drugs Trasylol and Avelox, but not Baycol.

In October 2006, SM again met with the Government, and the

Government approved filing and eventually unsealing a complaint against Bayer concerning the drug Baycol. SM filed it as a separate matter since the existing complaint against Bayer, which included Trasylol and Avelox, was still being investigated and was under seal.

SM continued its discussions with the Government about the complaints and on April 24, 2008, the Government filed a notice of declination as to the Baycol complaint, but continued to investigate the initial complaint involving Trasylol and Avelox, which we continued to work on, including by drafting and filing amended complaints. Therefore, despite the billing records, which initially were entitled "Baycol", SM's work was done for all three drugs, because, had it not been for the Governments' request, SM would have filed just one complaint against the Defendants with all three drugs.

Once the Baycol case was unsealed, SM spoke to Defendants' Counsel Mr. Lustberg, who said that Defendants planned to request the MDL panel to transfer the Baycol matter to the existing MDL in Minnesota—meaning that active litigation on *Baycol* would not begin until the MDL panel's transfer decision. All the while, the case involving Trasylol andAvelox remained under seal.

All the work done by SM was done on all the settled cases as an undivided whole. Despite continuing to work on the Baycol case once it was transferred to the MDL in Minnesota, SM does not seek fees for that work. Therefore, all the work done on both complaints against the same Defendants, for the same causes of action, under the same legal theories, was done in cases filed in the District of New Jersey.

## **ARGUMENT**

Courts' role when evaluating the reasonableness of statutory fee

requests is not to achieve "auditing perfection," but to confirm that, given the circumstances, "rough justice" has been done. *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]he starting point" in this task "is the lodestar"—"'hours reasonably expended" times a "reasonable hourly rate.'" Br. 5 (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (further quotation and citation omitted). "[O]nce the lodestar is determined, it is presumed to be the reasonable fee." *Lanni v. N.J.*, 259 F.3d 146, 149 (3d Cir. 2001) (collecting authorities); *Damian J. v. School Dist. of Philadelphia*, 358 F. App'x 333, 336 (3d Cir. 2009) ("product" of lodestar calculation "is a presumptively reasonable fee[.]") (quoting *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007)). Fees cannot be "based upon a generalized sense of what is customary or proper" but rather "must rely upon the record" (*Smith v. Philadelphia Hous. Authority*, 107 F.3d 223, 225 (3d Cir. 1997) (quoting *Coleman*, 87 F.3d at 1510)). "The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate …. Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence." *Smith*, 107 F.3d at 225.

**I.   BECAUSE SM MET ITS PRIMA FACIE BURDEN, ITS CLAIMED AWARD IS PRESUMPTIVELY REASONABLE**

It was SM's opening burden to present evidence "supporting the hours worked and rates claimed[.]" *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (quotation and citation omitted) SM met this burden by presenting specific, credible evidence

of its reasonable rates, hours, and overall lodestar. Br. 5-8 (rates);[3] 8-9 (hours); 9-10 (overall lodestar); *see also* 11-12 (fees on fees); Stone Decl. ¶¶ 21-101 & Exs. 1, 2. SM's claimed lodestar is "presumptively reasonable." *UAW Local 259*, 501 F.3d at 290.

In its opposition, Bayer does not challenge SM's claimed fees; the veracity of its evidence of hours claimed; or, for instance, the qualifications of SM's timekeepers. Stone Decl. ¶¶ 20-98. Bayer has thus forfeited such objections, and SM's rates charged and hours billed should be viewed as established. *E.g.*, *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (absent countervailing "evidence, the plaintiff must be awarded attorneys' fees at her requested rate." *id.* (citations omitted)); *C&D Techs.*, 897 F.3d at 137 (while "case law provides district courts with substantial discretion to determine what constitutes reasonable attorneys' fees," "any reduction [must be] based on objections actually raised by the adverse party" (quotations and citations omitted)).

## II. BAYER DOES NOT REBUT THE PRESUMPTION THAT SM'S REQUEST IS REASONABLE

Bayer's burden in opposition was to present specific objections and credible evidence calling SM's claimed award into question. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (courts generally cannot reduce claimed fees absent specific

---

[3] SM showed its rates are reasonable because: (i) they are the same rates SM bills and collects from its hourly clients; (ii) the rates resemble or are more conservative than those of other lawyers petitioning for fees, and undercut defense counsel's likely rates (Dkt. 409-2 at 16); (iii) they have been validated by federal courts in FCA cases; and, (iv) the blended rate yielded by SM's claims lodestar is reasonable. Br. 5-8 (collecting authorities); Stone Decl. ¶¶ 20-31 & Exs. 1, 2.

objection); *Virtua Health, Inc. v. Diskriter, Inc.*, No. 19-21266, 2020 U.S. Dist. LEXIS 132218, 2020 WL 4282752, at *5 (D.N.J. July 27, 2020). The Court "is not mandated to go line by line through the billing records[ ]" if Bayer fails to raise specific concerns about SM's claimed lodestar backed by credible evidence or convincing argument. *D'Ottavio v. Slack Techs.*, No. 1:18-cv-09082-NLH-AMD, 2022 U.S. Dist. LEXIS 232448, at *3, *4 (D.N.J. Dec. 27, 2022). Bayer's opposition contains neither. Instead, Bayer rests on legal arguments which are baseless, buttressed by fabricated facts and the opinions of an unqualified billing 'expert' who is neither reliable nor credible.

### A.   Bayer's Argument That This Court Can Not Award Fees for Baycol Is Factually Baseless and Legally Meritless

Contrary to Bayer's suggestion that SM's work on the *Baycol* matter is not compensable here, the Court has jurisdiction to resolve dispute ancillary to cases before it. Br. 4 (citing *Butt v. United Bhd. of Carpenters*, 999 F.3d 882, 889 (3d Cir. 2021) (noting "abundance of caselaw supporting … ancillary jurisdiction" over fee disputes)), and the inherent power and right to award fees to New Jersey counsel for cases brought in New Jersey. *Haas v. Burlington Cty.*, No. 08-1102 (NLH/JS), 2019 U.S. Dist. LEXIS 163155, at *19 (D.N.J. Sep. 3, 2019) ("the Court's allocation is ultimately based on equitable principles."). In fact, the Third Circuit has specifically confirmed that FCA fee disputes are appropriately lodged in the forum the complaint was filed. *Simring v. Rutgers*, 634 F. App'x 853, 858 n.1 (3d Cir. 2015) ("[w]e think it plain that the litigation here was 'lodged' in New Jersey, as that is where the Complaint was filed."). Bayer's argument that the MDL transfer order stripped this Court of jurisdiction to resolve this fee

dispute is baseless.

Bayer tries to bolster its case for divesting this Court of jurisdiction over *Baycol* fees with a recitation of procedural history that is factually inaccurate and, arguably, misleading. *See* Opp. 1-3, 9-11. Bayer writes:

> in 2005, [Relator] filed two actions under the [FCA] against Bayer. The case before this Court involves two drugs, Trasylol and Avelox. According to the Tenth Amended Complaint, Bayer caused the submission of false claims … by certifying compliance with federal law while paying kickbacks to doctors and engaging in off-label promotion. *Separately, in the District of Minnesota, Relator litigated another qui tam action involving a different product, a different legal theory*, [and] *different allegations*[.]

Opp. 3 (emphasis added). SM, on behalf of Relator, filed the *Baycol* complaint not in Minnesota, but in New Jersey. *U.S. ex rel. Simpson v. Bayer*, 06-4796-(PGS) (D.N.J.)).[4] Bayer also misleadingly asserts that this case can't be compared to *Baycol* since Relator there alleged claims based on "misrepresenting … safety and efficacy (i.e., *not* by falsely certifying compliance, paying kickbacks, or engaging in off-label promotion)." Opp. 3. But Bayer omits that in *Baycol*, too, Relator alleged claims for kickbacks and false or fraudulent promotions substantially similar to the Trasylol/Avelox claims. *E.g.*, Am. Complaint, 06-4796-PG, Dkt. 6, at 36 ("**Baycol Kickbacks**" section); ¶¶ 144 (alleging "false certifications … to get false or fraudulent claims

---

[4] It should be no surprise to Bayer that *Baycol* was filed in New Jersey; the facts are recited on the first few pages of the Settlement Agreement. RECITALS ¶ B (recounting that on "October 5, 2006, Relator filed a second qui tam action in the United States District Court for the ***District of New Jersey*** pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) captioned … *Simpson v. Bayer Corporation*, 06-4796-PG, which, in October 2008, was transferred to the United States District Court for the District of Minnesota[.]") (emphasis added).

approved"); ¶ 164 (describing off-label promotions).[5]

Thus, all of the fees sought were earned by New Jersey Counsel in a single representation of a single client with the same Defendants and filed in this New Jersey Court. None of the fees sought were earned in Minnesota or related to a Minnesota Court. Far from "present[ing] … a *different set of claims*, *a different theory of fraud*, … [and] *different allegations*," (Opp. 3 (emphasis added), *Baycol* was an action by the same Relator, against the same company, arising from substantially the same facts—even if applied to different products—by the same originating counsel (SM), originally filed in the same state (New Jersey), but filed at a later time at the request of the Government. The cases were also all resolved by the same global Settlement—to which Bayer, but not SM, is party—which expressly contemplates that certain fees may relate to more than one action or overlap the jurisdiction of the two courts and provides for such an occurrence.[6]

On this record, the Court should not hesitate to resolve the entire fee dispute before it. *E.g.*, *United States ex rel Longhi v. Lithium Power*

---

[5] Bayer also stretches the truth by asserting that SM's "[supposed] core legal theory—that Bayer violated the Food & Drug Administration's misbranding regulations—was also rejected: all 30 misbranding claims were dismissed." Opp. 23; *see* Opp. 1 & 3 n.1 (citing *In re Baycol Prods. Litig.*, 732 F.3d 869 (8th Circ. 2013). Putting aside whether "misbranding claims" were ever SM's "core legal theory"—or how Bayer's counsel could know such a thing—in fact,*In re Baycol* held that certain of Relator's FCA claims did not pass muster under Rule 9(b) because she failed to "plead at least some representative examples of actual reimbursement claims". *Id.* at 880.

[6] The global Settlement Agreement approved by this Court makes no allocation between the various claims and Bayer's reliance on hearsay concerning the Government's unilateral internal allocations is improper and misplaced.

*Techs., Inc.*, 575 F.3d 458, 475-76 (5th Cir. 2009) ("When a 'plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories[]' …. [and] much of counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis … the district court should focus on the significance of the overall relief obtained … in relation to the hours reasonably expended[.]'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).[7] Bayer's apparent suggestion that the Court should transfer a portion of this New Jersey-originated action back to the Minnesota Court, leaving two coordinate courts reviewing substantially the same fee petition in parallel, flouts both judicial economy and common sense.[8] The Court should reject it.

---

[7] Bayer's other argument—that the Court should extend the "inextricably linked" standard articulated in *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*—falls flat. 995 F.2d 414, 420 (3d Cir. 1993). That standard applies to separate (usually prior/successive) cases, not (as here) to claims arising from the same (or parallel, as opposed to serial) allegations that have been divided for administrative/procedural reasons. Even under the inapplicable standard Bayer erroneously proposes, SM would still be entitled to all the fees it is seeking. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 474 (3d Cir. 1992) (upholding award of fees for predecessor preceding in § 1983 dispute); *Gulfstream III*, 995 F.2d at 420 ("if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was 'inextricably linked' to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award.") (citing *Keenan*, 983 F.2d at 474); *Avaya Inc. v. Telecom Labs, Inc.*, 2016 U.S. Dist. LEXIS 194346, at *46-47 (D.N.J. Sep. 7, 2016) (similar).

[8] This is not the first time that Bayer has multiplied proceedings by proposing meaningless procedural deck-shuffling in the MDL context. It recently brought two motions arguing that a transferor court couldn't alter a common fund settlement

### B.   Bayer's Request For A "Lack Of Success" Proportionate Reduction Strays From Law And Is Factually Untenable

SM showed that a lodestar multiplier of 1.5 or higher would be well "well within the range of attorneys' fees awarded and approved by" the Third Circuit, but in an effort to assist the Court in doing "rough justice", SM did not seek such a multiplier. *See also* Stone Decl. ¶ 102.[9] In response, Bayer proposes that the Court should impose on SM a 50% *discount* for a supposed "lack of success." *See* Opp. 3. Bayer's position is hard to square with the 46 million dollar settlement—a result the Government described the settlement as a "vindication" for the whistleblower program. Dkt. 415-2 (DOJ press release); *see also*, *e.g.*, Boccian Decl. (Dkt. 409-3) ¶ 11 ("I am aware of no other FCA settlement involving the administration of inpatient drugs involving kickbacks and off-label promotion that has resolved for as much as this Settlement represents. ... . [The] Relator's share percentage of 28.5% (towards the upper limit of what DOJ historically awards in non-intervened cases).").

The "proportionality" standard that Bayer asks the Court to apply defies longstanding, and still controlling, Third Circuit precedent. *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 295 (3d

---

determination; both the transferor and the MDL court rejected the argument. *Galinis v. Bayer Corp.*, No. 09-cv-04980-SI, 2020 U.S. Dist. LEXIS 10723, at *9 (N.D. Cal. Jan. 22, 2020); *Denton v. Danko Meredith, P.C. (In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices, & Prods. Liab. Litig.)*, No. 3:19-CV-1365-NJR-GCS, 2020 U.S. Dist. LEXIS 25825, at *6-7 (S.D. Ill. Feb. 14, 2020).

[9] Br. 10 (citing *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818 (3d Cir. 2010), and noting extreme contingency, ultimate success, and age of case as factors that would justify a multiplier). Of course, the Court retains the right to award such a multiplier if it concludes one is appropriate.

11

Cir. 2007) (rejecting proportionality analysis of type Bayer proposes in ERISA cases); *Cunningham v. McKeesport*, 807 F.2d 49, 54 (3d Cir. 1986) (same, statutory fee cases). Unsurprisingly then, none of Bayer's many cited cases (Opp. 20-21) supports applying such a standard here.[10] Nor would a proportionality standard even assist Bayer on these facts— SM's reasonable proportion of the $46,000,000 settlement would dwarf the fees it seeks.[11]

---

[10] Bayer cites (Opp. 21-22), for example, civil rights cases with nominal results (*e.g.*, *A. S. v. Colts Neck Bd. of Educ.*, 190 F. App'x 140, 142, 143-44 (3d Cir. 2006)); vexatious litigant cases (*e.g.*, *Hansen Found., Inc. v. City of Atl. City*, No. 1:19-cv-18608 (NLH/AMD), 2021 U.S. Dist. LEXIS 156765, at *55 (D.N.J. Aug. 19, 2021)); and cases brought to the jury when they would have settled but for counsel's inflated estimate (*e.g.*, *AMA Realty LLC v. 9440 Fairview Ave. LLC*, 13-cv-457 (JMV) (MF), 2020 U.S. Dist. LEXIS 209041, at *20-21 (D.N.J. Nov. 9, 2020). They are all irrelevant, as are Bayer's cited out-of-forum FCA cases. *E.g.*, *United* States *ex rel. McKinney v. DHS Techs., LLC*, 2016 WL 4592175, at *3–6 (M.D. Pa. Feb. 4, 2016) (court reduced fees due to forum rate rule, which is not at issue here since SM's rates are not objected to and undisputedly reasonable).

[11] Bayer's strained argument that SM's fee award should be cut in half because successor counsel or Relator (not SM) supposedly stated Bayer's exposure was higher than the $46 million settlement should also be rejected. As noted above, the proportionality standard Bayer proposes has been expressly rejected by the Third Circuit. Bayer, on the other hand, repeatedly characterized these actions as meritless, a strike suit, worth nothing, etc. Dkt. 409-3 ¶ 39 (citing Dkt. 304 (May 9, 2018, Discovery Motion Letter from Lustberg (ECF No. 304) at 2; Dec. 13, 2016, Lustberg Ltr. at 2))—presumably then, Bayer would not object to a fee multiplier based on the $46 million result actually obtained. Anyway, Bayer has not shown that its potential exposure was not as Relator and/or successor counsel claimed. Bayer now claims it was under "hydraulic pressure" to settle (Opp. 5 (quotation omitted)), but Bayer in the Settlement Agreement stated it "freely and voluntarily enter[ed] into th[e] Agreement without any degree of duress or compulsion" (¶ 17), and it stands to reason that Bayer settled based on a logical risk calculus, not a sudden aversion to discovery costs after 15 years. Bayer's invocation of judicial estoppel (Opp. 20) is also off-target—judicial estoppel applies to prevent parties from changing

### C.   Bayer's Proffered Expert Is Entitled To No Weight

The proposed testimony of Mr. Studer, Bayer's supposed fee expert, does not help evaluate the reasonableness of SM's lodestar. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing "a trilogy of restrictions on expert testimony: qualification, reliability, and fit."). Much of Mr. Studer's report consists of parroting Bayer's meritless legal arguments—most prominently, that work done for *Baycol* can't be recovered. *But see* ARGUMENT Part II.A, *supra* (contrary to Mr. Studer's premise, *Baycol* fees are recoverable). Such opinions do not help evaluate the record, and are entitled to no weight. *See* Fed. R. Evid. 702; *Smith v. New Jersey*, 09-cv-4268 (JBS)(KMW), 2013 U.S. Dist. LEXIS 97353, at *11 (D.N.J. July 11, 2013) ("even in the bench trial context, an expert witness must offer specialized knowledge and expertise, not legal analysis and conclusions.").

The value of Mr. Studer's proposed testimony is further diminished because he is not qualified. Based on his C.V., Mr. Studer was an Illinois insurance coverage lawyer (he may also have experience judging oyster-bed property rights in Texas). Dkt. 430-2. He is not a New Jersey lawyer nor an FCA lawyer—much less a seasoned veteran New Jersey lawyer practicing in the niche sub-field of FCA law that led to the $46 million dollar settlement. Nor does he have an accounting, forensics or economics background. In previous cases, he has relied on the Wolters Real Rate guide, but did not even offer that opinion here, perhaps because the Real Rate guide would have shown that SM's

---

positions after using some position before a Court to win a merits ruling; the doctrine has no relevance here.

claimed rates are, if anything, too conservative. *Sabinsa Corp. v. Herbakraft, Inc.*, No. 14-cv-04738 RBK-SAK, 2022 U.S. Dist. LEXIS 219396, at *16-17 (D.N.J. Dec. 5, 2022) (affirming magistrate's use of Mr. Studer's proffered Real Rate guide as objective yardstick of rates while rejecting as "ipse dixit" Studer's unsupported conclusion that "Camden legal rates are … lower than Philadelphia's[.]").

Nor is Mr. Studer's methodology reliable. Mr. Studer states that he put SM's spreadsheet of time entries into a "database" and then added a few new columns in SM's billing spreadsheet. Mr. Studer validates this procedure only with his own supposed expertise as a paid billing objection expert.[12]

Mr. Studer's report also runs afoul of basic New Jersey expert report requirements because he fails to include such basic information as the length of time he spent on the report, his hourly rate, and what he was being paid for writing it, or even whether his compensation is tied to Defendants' successful reduction of counsel's fee request. While superseding the Court's role as the ultimate legal decision maker, Mr. Studer provides cherry picked exerpts and mischaracterize time entries, and clearly does not evidence an understanding of the False Claims Act cases or the case against Bayer in particular.

In short and vague entries in his report, Mr. Studer claims that SM's fee should be reduced because of "vague wording," "block

---

[12] Mr. Studer's report also ill-fits the facts here; it is evident that it was not prepared with SM's submission in mind. *Cf.* Studer Rpt. at 2 (""fees and expenses collectively totaling $46,001,299, as reflected in the following table [listing less than a tenth of that amount at stake]").

billing," "lack of expense detail," "efforts for the Baycol litigation," (despite it being one of the cases that Bayer settled), "unsuccessful or unnecessary efforts," "unreasonable fees for clerical and administrative tasks" and "efforts for the Trasylol Products Liability Litigation or efforts unrelated to the Traylol Litigation," (the second case settled by Bayer). His seemingly complete misunderstanding of how FCA cases proceed or what unfolded in these litigations and leads to him suggesting that SM's fees and costs should be reduced by an astounding $2,612,066.75, or a total of 87.4% of SM's reasonable attorneys fees, costs, and expenses requested, and this under the FCA statute which provides that the court must award such reasonable attorneys, fees, and costs.

In sum, Mr. Studer's role is simply to act as a calculator summing up numbers based on arbitrary categories that have no support in the applicable law. As such, his opinion should be given little to no weight.

## **CONCLUSION**

For the above reasons, the Court should grant the SM Motion and award the requested attorney's fees, costs and expenses in the amount of $2,989,127,00.[13]

---

[13] Bayer seems to accept that—as SM pointed out in the opening—reasonable fees on fees are due here. Br. 11, Opp. 17. Since Bayer has now conceded SM's reasonable rates, SM will submit a supplemental affidavit and evidence of its reasonable hours, to be billed at no less than the conceded blended rate, at such a time as the Court permits. See *Taylor v. USF-Red Star Express, Inc.*, 212 F. App'x 101, 112 (3d Cir. 2006) (supplemental fees motion may be filed so long as the "timing is logical," e.g., at such a time when the amount is known).

**Dated**:     July 7, 2023

STONE & MAGNANINI LLP

By:   /s/ *David S. Stone*

David S. Stone
Robert A. Magnanini
STONE & MAGNANINI, LLP
400 Connell Drive, Suite 6200
Berkeley Heights, New Jersey
07922
Tel: (973) 218-1111
*Original Counsel to Relator*
*Laurie Simpson*