

Lawrence S. Lustberg
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: 973-639-6285
llustberg@gibbonslaw.com

February 3, 2024

**VIA CM/ECF**
Honorable Michael E. Farbiarz
United States District Judge
Frank R. Lautenberg U.S. Post Office & Courthouse
2 Federal Square
Newark, New Jersey 07102

  Re: *United States ex rel. Simpson v. Bayer Corp., et al.,* No. 05-cv-3895

Dear Judge Farbiarz:

  This Firm, along with Lehotsky Keller Cohn LLP, represents the Bayer defendants in the above-captioned matter. We write in connection with the pending motions filed by Olshan Frome Wolosky LLP ("Olshan") and Stone & Magnanini ("Stone") for attorney's fees. Those matters await Your Honor's decision; no party has requested a hearing or oral argument on them.

  We write now to inform the Court of a Report and Recommendation issued by the Special Master in litigation ("the Baycol litigation"), in the United States District Court for the District of Minnesota, Dkt. 330, *Simpson v. Bayer Corporation*, Civ. No. 08-5758 (MJD/ECW) (hereafter "Baycol R&R"). In addition to the fee petitions filed here, Olshan filed a fee petition in the District of Minnesota for the firm's work on the Baycol litigation. As we have previously argued, *see* Dkt. 430 at 1 (hereafter "Opp. Br."), Stone should also have filed a fee petition in Minnesota but chose not to do so, instead seeking its Baycol fees in this Court.

  On January 25, 2024, the Special Master in Minnesota issued the attached comprehensive, 46-page Report and Recommendation, reducing Olshan's requested fees by roughly 65% (from $859,671.47 to $304,968.85). The Special Master rejected many of the same arguments Olshan raises here, and she agreed with Bayer that Olshan should not receive most of the fees at issue. The Special Master reduced the Olshan fee request on four primary grounds, as follows:

  1. She struck virtually all the fees that Bayer flagged as clerical work.

  2. She reduced by 50% the fees that Bayer challenged as vague.

  3. She further reduced the total fees sought by 60% on account of Olshan's minimal contribution to any limited success Relator had.

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 2

    4.  She reduced by 70% Olshan's request for fees on fees.

Following the same reasoning, this Court should substantially reduce the fees sought here by both Olshan and Stone. Indeed, the Court can and should impose steeper deductions than the ones in Minnesota, and it should reject outright Stone's petition for Baycol fees because Stone has filed its application for Baycol fees in New Jersey, which is the wrong place.

### I.    Summary of Report and Recommendation

The Baycol litigation was another False Claims Act ("FCA") case filed by Relator against Bayer. Opp. Br. at 3. Like the litigation pending here regarding Trasylol and Avelox, the Baycol case ended in a settlement, with Relator receiving only pennies on the dollar that she originally claimed. Baycol R&R at 3, 39. Also as in the litigation here, Olshan moved for an unreasonable amount of fees: $859,671.47 ($700,571.58 for the underlying litigation and $159,099.89 in fees on fees). *Id.* at 4.

The Special Master rejected most of Olshan's arguments and awarded the firm roughly one-third of its total request: $304,968.85 ($255,136.27 for the underlying litigation and $49,832.58 in fees on fees). *Id.* at 46. The Special Master reduced Olshan's fee award for several reasons.

*Clerical and Administrative Tasks.* Bayer challenged $42,734.95 of the fees sought as clerical, and the Special Master agreed with Bayer almost entirely. The Special Master deducted $41,313.00 from Olshan's fees for "unrecoverable clerical and administrative tasks," *id.* at 20, including the "processing of CD-ROMs, preparing file folders, organizing documents, scanning court papers, updating lists of files, and preparing binders," *id.* at 19. As the Special Master recognized, the "weight of the authority is that such tasks are considered overhead and are not separately recoverable." *Id.* at 20 (collecting cases).

*Vaguely Described Work.* Bayer challenged $56,407.60 in fees as improperly vague. The Special Master reduced these fees by 50%. *Id.* at 25. The Special Master explained that it "is well-settled that billing entries must be sufficiently detailed for the district court to ascertain reasonableness." *Id.* at 23 (collecting cases). Many of Olshan's entries were too "general and void of context or subject matter to ascertain the nature of the task and the reasonableness of time expended." *Id.* at 25. And the challenge of assessing reasonableness was "further complicated" by Olshan's block-billing. *Id.* at 24.

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 3

*Lack of Success.* The Special Master next applied a 60% reduction to all remaining fees for Olshan's overall lack of success. *Id.* at 39.[1] The Special Master concluded that "the degree of success is an appropriate factor to consider in attorneys' fees cases under the FCA." *Id.* at 31. Any success the Relator achieved was "partial[]" at most. *Id.* at 39. The settlement was a fraction of the "hundreds of millions of dollars in damages" Relator sought. *Id.* at 39.

In particular, the Special Master rejected Olshan's attempt to take credit for other firms' work. As the Special Master explained, Relator achieved little success "under Olshan's watch." *Id.* at 35. By the time Olshan exited the litigation, "all of the claims had been dismissed." *Id.* at 39. Any success achieved later was "largely based on the work of other firms." *Id.*

The Special Master similarly rejected Olshan's attempt to "leverage the entirety of the $46 million global settlement in characterizing this case as achieving a high degree of success." *Id.* at 35. The Special Master explained: "Even if, as Olshan advocates, the totality of the $46 million settlement figure is the appropriate measure of success, the fees that Olshan seeks cannot be viewed in isolation. Rather, the fees Olshan seeks would be viewed in the context of the $50 million in fees and expenses sought by various attorneys in both this and [the] New Jersey Action." *Id.* at 38. Thus, regardless of how the recovery is viewed, Olshan could not recover the majority of the fees it sought. The Special Master "recommend[ed] that the lodestar, after subtractions for clerical tasks, unrelated work, and vague billing, be reduced by an additional 60%." *Id.* at 39.

*Excessive Fees on Fees.* The Special Master also reduced Olshan's fees on fees request by 70%, after striking $5,453.75 in fees because of unidentified billers. *Id.* at 45-46. The Special Master identified "[s]everal factors" warranting this reduction, including Olshan's inefficiencies and failure to meet and confer with Bayer before filing its unopposed intervention motion. *Id.* at 41. The Special Master concluded that the 253.45 hours Olshan allegedly spent on the fee petition were an "unreasonable number of hours to expend in furtherance of attorneys' fees." *Id.* at 41-45. Thus, the Special Master reduced the $151,211.75 request for fees on fees to $43,727.40. *Id.* at 46.

*Unnecessary Expenses.* Finally, the Special Master deducted $3,890.14 from Olshan's fees for "Westlaw legal research charges," which were "not recoverable." *Id.* at 40.

---

[1] This discount captures not only Olshan's *overall* lack of success, but also Olshan's failures on the *particular* pleadings it oversaw. Baycol R&R at 35.

Honorable Michael E. Farbiarz
February 3, 2024
Page 4

**II.     Relevance of Decision to Fee Petitions in This Court**

This Court should follow the Special Master's lead and reduce Olshan's and Stone's fees here as well. As the Court can see, the Special Master conducted a careful, line-by-line analysis of the fees sought by Olshan sought. *See, e.g.*, Baycol R&R at 18-19, 23-25, 40. Third Circuit precedent requires the same analysis. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) ("[I]t *is* necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request."); *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (emphasis added).[2] The Special Master also rejected Olshan's arguments—which Olshan and Stone recycle here[3]—critiquing the report of Bayer's expert, Jerome C. Studer. Instead, the Special Master relied on Mr. Studer's careful analysis, *see, e.g.*, Baycol R&R at 18, 21, 23, 32, 40, and this Court should as well.

Ultimately, the Special Master concluded that Olshan should receive only one-third of the fees it sought. This was generous to Olshan. As discussed below, following precedent in this Circuit, the Court can and should impose even steeper discounts.

**A.  Reduction for Clerical and Administrative Tasks and Vaguely Described Time**

Just as in Minnesota, Olshan seeks fees in this Court for clerical and administrative tasks. Mr. Studer identified $58,181.15 in such time entries. Opp. Br., Ex. A, Studer Report at 18. None of that should be recoverable. Mr. Studer also identified $149,801.10 in vaguely described time. Opp. Br., Ex. A, Studer Report at 18. Under the Special Master's reasoning, only half of that ($74,900.55) would be recoverable.

For the fees that Stone seeks for Trasylol and Avelox (which are the only fees Stone can recover from this Court, *see infra* Part II.D), $1,105 was for clerical work, and $588,172.50 was vaguely described. Opp. Br. Ex. A, Studer Report at 13-14. Under the Special Master's report, then, only half of the vaguely described time ($294,086.25) would be recoverable, and none of the time for clerical work would be.

---

[2]   Stone's suggestion that this Court need not complete the required review simply because Stone disagrees with Bayer's objections to its fees is obviously incorrect. Dkt. 437 at 7 (hereafter "Stone Reply Br.").

[3]   Stone also argues that Mr. Studer's opinions are invalid because he did not disclose his rate and fees. Stone Reply Br. at 14. That information is not required, and Stone states no authority for its position. Nonetheless, so that the Court and counsel have this information, please be advised that Mr. Studer has billed Bayer a total of $147,738.97 for his work.

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 5

However, courts within this Circuit strike vague entries *entirely* instead of reducing them by 50%, as occurred in Minnesota. *See, e.g.*, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 100-01 (3d Cir. 2006) (striking "the combined total" of vague time entries); *M3 USA Corp. v. Hart*, No. CV 20-5736, 2021 WL 2917374, at *9 (E.D. Pa. July 9, 2021) ("Guided by our Court of Appeals in *Tenafly*, we strike time entries which are too vague as to deprive us of the ability to determine whether the time billed is unreasonable for the work performed."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2014 WL 2860863, at *8 (M.D. Pa. June 23, 2014), *aff'd*, 612 F. App'x 612 (Fed. Cir. 2015) (striking counsel's entries "for vague and unspecified tasks"); *Jama Corp. v. Gupta*, No. 3:99-CV-01624, 2008 WL 108671, at *7 (M.D. Pa. Jan. 4, 2008) ("disregard[ing]" billing entries that "include[d] broad statements such as 'Review litigation documents,' 'Review documents for Exhibit list,' 'Review pleadings,' 'Review trial exhibits,' and 'Review trial exhibits & documents'"). This Court should follow that intra-Circuit precedent.

**B. Reduction for Lack of Success**

The Special Master imposed a 60% discount (on all remaining fees) for overall lack of success. Baycol R&R at 39. She rejected the very same arguments that Olshan and Stone make here—*i.e.*, that the settlement amount "alone supports the reasonableness" of the fee request, and that courts cannot discount fees for lack of success in FCA cases, *id.* at 26. A 60% discount would reduce Olshan's fees by $369,253.38, and Stone's fees (for Trasylol and Avelox work) by $434,986.35.

But the Third Circuit has imposed steeper discounts for lack of success, up to 80% of the fees sought. *E.g.*, *A.S. v. Colts Neck Bd. of Educ.*, 190 F. App'x 140, 143-44 (3d Cir. 2006) (affirming 80% reduction for limited success in education rights case); *see also* Opp. Br. at 21-22.[4] Other courts have reduced fees up to 95%. *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1292-94 (11th Cir. 2017) (affirming 95% reduction in FCA case based on a "limited trial victory"). Also, whereas the Special Master imposed only one discount—covering both Olshan's overall lack of success and the firm's losses on particular motions—this Court can impose both a percentage discount, *see* Opp. Br. at 18-24, and strike specific fee requests outright, *see id.* at 11-13. For instance, Olshan seeks to recover $80,920 for 111 hours spent unsuccessfully opposing Bayer's efforts to vacate the transfer order in this case. *Id.* at 13. None of that should be recoverable.

---

[4]   The cases that Stone cites in its reply (at 11-12) are inapposite because Bayer is not seeking to impose a "proportionality standard." Rather, Bayer simply urges this Court to follow established precedent, which imposes discounts for lack of success and when a firm does not contribute to any success.

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 6

More fundamentally, neither Olshan nor Stone contributed in any meaningful way to Relator's minimal success, which pales in comparison to the "billions of dollars" her counsel repeatedly told this Court, the Special Master, and the mediator that her case was worth. "Even if . . . the totality of the $46 million settlement figure is the appropriate measure of success," Baycol R&R at 38, the settlement was a tiny fraction of Relator's claims and the billions of dollars that were recovered in similar FCA cases, *see* Opp. Br. at 19-20. Based on her statements of the value of the case, Relator was even less successful here than in Minnesota.

Regardless, even if Relator's recovery were deemed substantial, Olshan's and Stone's contributions were not. The firms' brief tenures on the case were marked by failed legal theories, failed efforts at government intervention, and failed settlement efforts. Their legacy was a complaint that Bayer did not have to answer and that other firms had to re-write. *See id.* at 23-24. None of that warrants substantial fees.

### C. Excessive Fees on Fees

Olshan now seeks $201,729.25 in fees on fees. *See* Dkt. 436-1 at ¶ 16 (Olshan Reply Br., Bisceglie Decl.). If the Court applied the 70% discount applied by the Special Master, the Court would reduce these fees by $141,210.48.

Olshan should receive far less. First, Olshan is seeking $50,000 more in fees here than it did in Minnesota. Because Olshan's request here is more unreasonable, there should be a larger discount. Second, by comparison, other firms that filed petitions in this Court sought less than $20,000 in fees on fees. *See* Dkt. 410 at 15 (Sadowski Fee Pet.) (seeking $7,500 for preparation of fee motion); Dkt. 411-1 at 12 (G.C. Robinson Fee Pet.) (seeking $16,180 for preparation of fee motion).

### D. Reduction for Fees for Work on Baycol Litigation

The Special Master's Report also supports Bayer's position that Stone is seeking Baycol fees in the wrong forum. Unlike Olshan and two other firms, Stone improperly filed its petition for Baycol fees in this Court, which does not have jurisdiction over the Baycol case. It is well settled that when a motion for transfer "has been granted, and the papers lodged with the clerk of the transferee court . . . the transferor court . . . loses all jurisdiction over the case and may not proceed further with regard to it." *Tuoni v. Elec. Evidence Discovery Inc.*, No. 10-2235 (RMB/JS), 2011 WL 540392, at *5 (D.N.J. Feb. 8, 2011); *see also Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843, 845 n.4 (3d Cir. 1994). While the Baycol case was

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 7

originally filed in the District of New Jersey, once the case was unsealed, it was promptly transferred to the District of Minnesota, and this Court was divested of jurisdiction.[5]

The Baycol case and the Trasylol-Avelox suit in this Court were distinct cases that were filed separately and always remained separate. They concerned different drugs and different theories of purported fraud against different federal agencies. Indeed, Stone's own time sheets reflect that the firm separated its time entries and work product for the separate cases, with 82.5 pages of Baycol entries and 40.5 pages of Trasylol/Avelox entries. *See, e.g.*, Dkt. 420-4. The time spent on the two cases was not "inextricably linked," and there is no evidence that Stone's Baycol work product was "actually utilized" in the Trasylol/Avelox case. *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) (no recovery unless "the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was 'inextricably linked' to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses.").[6] Stone has thus failed to meet its burden under *Gulfstream*. And, of course, Stone had every opportunity to file in Minnesota and just refused to do so, even after Bayer notified Stone of its improper filing.

The Court should therefore reject Stone's request for Baycol fees. In addition to Stone's complete failure to satisfy the Third Circuit's test in *Gulfstream*, the Baycol fees at issue "are objectionable for reasons other than the fact the work was not for the *Trasylol* Litigation." Opp. Br., Ex. A, Studer Report at 10 n.10. Thus, even if the Court addresses Stone's Baycol fees, it should reject them for the reasons addressed in Bayer's opposition brief and the report of Mr. Studer.

---

[5] Contrary to Stone's assertions, Bayer's opposition brief correctly stated that the Baycol case was *transferred* to Minnesota, not that it was originally filed there. Opp. Br. at 13. Bayer also pointed out that Stone unsuccessfully opposed the transfer. *Id*.

[6] Contrary to Stone's suggestion, there is no special rule for "New Jersey Counsel." Stone Reply Br. at 9. Stone is not permitted to file in this Court for fees incurred in the Baycol litigation—while Olshan and every other firm properly filed in Minnesota—simply because Stone is based in New Jersey and completed its work in its office in New Jersey. Further, if Stone incorrectly recorded time, as it suggests in its brief, that is not a basis to award fees for the Baycol litigation in this Court. To the contrary, it is the obligation of a party seeking fees to properly and reliably record time. *See Cityside Archives v. N.Y. City Health & Hosp.*, 37 F. Supp. 2d 652, 659 (D.N.J. 1999) ("The attorney seeking to be awarded fees has the burden of establishing the entitlement to an award and, therefore, documenting the appropriate hours expended and the hourly rates, and . . . 'should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" (citation omitted)).

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 8

### E. Other Reductions

Other reductions are warranted for both Stone and Olshan under the Special Master's approach. The Special Master reduced Olshan's fee award in Minnesota by the amount of unrecoverable legal research fees claimed. Baycol R&R at 40. Similar reductions are appropriate here for both Stone ($10,705) and Olshan ($3,978.96). Opp. Br., Ex. A, Studer Report at 13, 20; Dkt. 436-3 at 5 (Olshan Reply Br., Ex. B).

Still other reductions beyond those applied by the Special Master in Minnesota are warranted here under Third Circuit precedents. For starters, Stone and Olshan improperly seek fees for work on product liability litigation in Florida ($29,905 for Stone and $236,533 for Olshan, Opp. Br., Ex. A, Studer Report at 10, 17). *See Gulfstream*, 995 F.2d at 420. Olshan's astronomical time spent transitioning counsel ($75,663, Opp. Br., Ex. A, Studer Report at 18) should not be recoverable either. Furthermore, whereas the Eighth Circuit may allow recovery of expenses for "facsimiles, mail and postage, and reasonable travel expenses," Baycol R&R at 40, courts within the Third Circuit do not, *see, e.g.*, *In re Penn Cent. Transp. Co.*, 630 F.2d 183, 191 (3d Cir. 1980) (disallowing recovery of "postage"); *Yong Fang Lin v. Tsuru of Bernards, LLC*, Civ. No. 10-2400, 2011 WL 2680577, at *4 (D.N.J. July 8, 2011) (disallowing recovery of "overhead costs" such as "binders" and "meals"); *Polcino v. City of Philadelphia*, No. CIV. A. 89-4672, 1991 WL 124592, at *2 (E.D. Pa. July 3, 1991) (disallowing recovery of "travel, parking and postage expense[s]"); *see also* Opp. Br., Ex. A, Studer Report at 13, 20-21 (detailing $13,380 in such expenses for Stone and $6,145 for Olshan). And, in line with the pertinent Third Circuit jurisprudence, this Court should reduce the fees sought for time spent on unsuccessful litigation tasks ($8,723 for Stone and $116,206 for Olshan, Opp. Br., Ex. A, Studer Report at 11, 18)—separate and apart from the overall reduction for lack of success. *See, e.g.*, *Rode v. Dellarciprete*, 892 F.2d 1177, 1186 (3d Cir. 1990) (Courts have the discretion to deduct "time expended on . . . motions [that were] unrelated to the relief ultimately obtained."); *see also* Opp. Br. at 11-13.

### III. Summary and Conclusion

Following the Special Master's report, the maximum fee awards Olshan and Stone should receive in this litigation are:

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 9

Stone

| Fees Claimed for Underlying Litigation | $2,952,811.00 |
|---|---|
| Less Fees Invoiced for the Baycol Litigation | $1,932,642.50 |
| Less Fees for Clerical or Administrative Efforts | $1,105.00 |
| Less 50% Fees for Vaguely Described Efforts | $294,086.25 |
| Less 60% Reduction for Lack of Success | $434,986.35 |
| **Expenses Claimed** | **$36,317.00** |
| Less Legal Research Expenses | $10,705.00 |
| **Maximum Fee & Expenses Award for Stone Magnanini** | **$315,602.90** |

Olshan

| Fees Claimed for Underlying Litigation | $748,504 |
|---|---|
| Less Fees for Clerical or Administrative Efforts | $58,181.15 |
| Less 50% Fees for Vaguely Described Efforts | $74,900.55 |
| Less 60% Reduction for Lack of Success | $369,253.38 |
| **Fees Claimed for Motion for Fees** | **$201,729.25** |
| Less 70% Reduction | $141,210.48 |
| **Expenses Claimed** | **$25,849.13** |
| Less Legal Research Expenses | $3,978.96 |
| **Maximum Fee & Expenses Award for Olshan Frome** | **$328,557.86** |

As discussed above and in Bayer's opposition brief, this Court should award less. The Court should reduce Stone's request to no more than $188,530.13 and Olshan's request to no more than $62,871.38. *See* Opp. Br. at 24.

Thank you for your kind consideration of this matter.

Respectfully submitted,

 s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4731

GIBBONS P.C.

Honorable Michael E. Farbiarz
February 3, 2024
Page 10

                                       Jonathan F. Cohn (*pro hac vice*)
                                       LEHOTSKY KELLER COHN LLP
                                       200 Massachusetts Ave., N.W.
                                       Washington, D.C. 20001
                                       Tel.: (202) 538-1214

                                       *Counsel for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., and Bayer Healthcare LLC*

cc: All Counsel of Record (via ECF)